ARLEY DUNN *et al.*, as Co-Adm'rs of the Estate of Lyle E. Dunn, Deceased, Plaintiffs-Appellants, v. THE BALTIMORE & OHIO RAILROAD COMPANY, Defendant-Appellee.

Fourth District   No. 4—86—0740

Opinion filed September 3, 1987.—Modified on denial of rehearing November 19, 1987.

LUND, J., specially concurring.
GREEN, J., concurring in part and dissenting in part.

Phebus, Tummelson, Bryan & Knox and Johnson, Frank, Frederick & Walsh, both of Urbana (Joseph R. Phebus, of counsel), for appellants.

James C. Kearns and John D. Flodstrom, both of Heyl, Royster, Voelker & Allen, of Urbana, for appellee.

PRESIDING JUSTICE SPITZ delivered the opinion of the court:

Plaintiffs Arley Dunn and Nada Lou Dunn (the Dunns) appeal the dismissal with prejudice of their third-amended complaint seeking damages on the basis of alleged negligence and wilful and wanton misconduct on the part of the defendant Baltimore & Ohio Railroad Company (B&O), which they assert caused the death of their son, Lyle E. Dunn (decedent).

The Dunns' third-amended complaint consists of eight counts. Common to all counts are allegations that at about 9:30 p.m. on October 29, 1983, decedent was operating a motor vehicle in a northerly direction across the Smith Street crossing of the B&O tracks in Newman, Illinois. In so doing, decedent's motor vehicle collided with a stopped B&O train which decedent "was unable to see until it was too late to avoid the collision due to one or more of the acts set forth

hereinafter or a combination thereof."

Count I, which is a survival action, alleges B&O committed the following wilful and wanton acts which proximately caused decedent's injuries and death, and damage to his property: (1) failed to provide warnings of railcars in the crossing which B&O periodically and intentionally stopped there during hours of darkness, even though it knew (a) the visibility at night was so poor that a motorist might not see the cars until it was too late, (b) the crossing was extrahazardous when railcars were stopped there during hours of darkness, or (c) "that considering the periodic presence of parked cars, the motor vehicular traffic, the absence of lighting at the crossing during hours of darkness, and elevated approach grades of the crossing, and the obstructions to view in various quadrants of the crossing," the crossing was extrahazardous, and (2) failed to provide warning of railcars in the crossing which it periodically and intentionally stopped there even though it knew the crossing was extrahazardous when railcars were stopped there during hours of darkness.

Count II, also a survival action, alleges that B&O engaged in wilful and wanton misconduct in not conforming the Smith Street crossing to various rules promulgated by the Illinois Commerce Commission (ICC). The count specifically alleges that B&O:

"A. Intentionally constructed and maintained for a period of many years prior to the occurrence the crossing in such a manner that the crossing violated Rule 4 of General Order 106 of the Illinois Commerce [Commission] in that the surface of the roadway was not flush and level with the top of the rails between the rails and for a distance of at least 16 inches beyond the outside rail, and the width of the crossing was less than 18 feet measured at right angles to the centerline of the road, all of which was known to the defendant, and which conditions could cause an unnecessary diversion of the attention of a motorist such as plaintiff's decedent to the surface of the roadway thereby reducing his opportunity to look for approaching trains or trains standing on the crossing.

B. Knowingly and intentionally raised the level of the tracks at the crossing with the result that the roadway approaches thereto were changed so as to violate the requirements of Rule 204 as promulgated by Illinois Commerce Commission Order 138 with the result that a motorist such as the plaintiff's decedent would see under the rail car rather than see the rail car and thus be misled to believe that the crossing was unobstructed.

C. For an extended period of time knowingly allowed the right-of-way adjacent to its tracks to become obstructed by brush, shrubbery, weeds and crops within five hundred (500) feet of the crossing in violation of Rule 205 as promulgated by Illinois Commerce Commission General Order 138 with the result that the attention of a motorist such as the plaintiff's decedent was unnecessarily diverted to the areas obscured by said brush, shrubbery, weeds and crops thereby reducing the motorist's opportunity to observe whether or not there were any approaching trains or rail cars stopped upon the track.

D. After it intentionally raised one of the two sets of track at the crossing, knowingly failed to adjust or arrange for adjustment of the roadway approaches so as to conform them as nearly as practicable to Rules 203 and 204 in violation of Rule 207 as promulgated by Illinois Commerce Commission General Order 138 with the result that a motorist such as the plaintiff's decedent would see under the rail car rather than see the rail car and thus be misled to believe that the crossing was unobstructed.

E. Knowingly allowed the crossing to become and remain for an extended period of time so rough and uneven that a motorist's attention was unnecessarily diverted to the surface of the roadway thereby reducing the motorist's opportunity to look for approaching trains or rail cars stopped on the crossing in violation of Rule 206 as promulgated by Illinois Commerce Commission General Order 138."

Count III, which requests damages on the theory of wrongful death, repeats all the allegations of wilful and wanton misconduct alleged in count I, except it does not allege B&O's failure to provide warning of trains standing at the Smith Street crossing even though it knew that because of the periodic presence of parked cars, the motor vehicular traffic, the absence of lighting, *et cetera*, the crossing was extrahazardous. Additionally, count III alleges B&O wilfully and wantonly started the train notwithstanding that there were police cars at the Smith Street crossing with their headlights shining on decedent, who was still alive at the time and in plain view of B&O's employees.

Count IV, also a wrongful death action, alleges B&O wilfully and wantonly committed the same violations of ICC rules alleged in count II.

Count V, a survival action, alleges B&O was negligent in that it (1) failed to provide automatic flashers, flares, or a flagman to warn

of the presence of stopped railcars in the Smith Street crossing, notwithstanding its periodically stopping railcars on the crossing during hours of darkness, "the vehicular traffic, the lack of lighting at the crossing, the grades and general condition of the crossing, that the crossing was extrahazardous"; (2) periodically stopped railcars on the Smith Street crossing during hours of darkness, even though it knew or should have known that it was "difficult for a motorist to see a rail car parked at the crossing during the hours of darkness an adequate distance back from the crossing to safely stop before striking the parked rail car"; and (3) failed to maintain the crossing in such a condition that a motorist's attention would not be unnecessarily diverted and motorists would not be unnecessarily distracted, and "in such a manner that a motorist would not receive the false illusion that a train was not blocking the crossing," with the result that in violation of "Ill. Rev. Stat., ch. 114, Section 62, a motorist could not safely cross the crossing during hours of darkness."

Count VI, also a survival action, alleges that B&O negligently committed the same violations of the ICC rules with respect to the Smith Street crossing stated in count II.

Count VII, a wrongful death action, alleges that B&O was negligent for all the reasons stated in count V. Additionally, it alleges that B&O was negligent in that (1) B&O's train crew failed to give an audible warning of the pending movement of the train with which decedent collided and failed to exercise an adequate lookout prior to starting the train, notwithstanding that decedent was still alive, potential rescuers were at the scene and the crew in the exercise of ordinary care should have known that a collision with the train or some other unusual event had occurred at the Smith Street crossing; (2) the train crew in the caboose failed to exercise an adequate lookout forward prior to starting the train, and (3) it "failed to post a flagman and ignite flares at the rear of the stopped train."

Count VIII, also a wrongful death action, alleges that B&O negligently committed the same violations of the ICC rules with respect to the Smith Street crossing alleged in count II.

Before considering the substantive arguments raised on appeal, two preliminary matters need to be addressed. We first consider B&O's motion to strike the Dunns' brief on the basis that it contains references to deposition testimony which is irrelevant for purposes of this appeal and which is so intertwined in the brief that it cannot be easily excised by means of a motion to strike it from the brief. In opposition to this motion, the Dunns point out that B&O's motion to dismiss their second-amended complaint makes reference to a deposition

of the Dunns' expert Thomas Berns, and that an affidavit in support of that motion was placed on file. The Dunns further note that none of the motions to dismiss or orders entered by the circuit court in this cause make reference to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615). The Dunns also assert that the record demonstrates that the trial court considered more than the allegations of their complaint. For these reasons, the Dunns maintain that the references to depositions in their brief are appropriate and proper, and that in any event these references could not have prejudiced B&O in responding to their brief.

Sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, pars. 2—615, 2—619) each provide a procedure for dismissal of causes prior to trial. Depositions may not be considered in ruling on a section 2—615 motion, but may be considered in acting on a section 2—619 motion to dismiss. See Ill. Ann. Stat., ch. 110, par. 2—619, at 662 (Smith-Hurd 1983); *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 450 N.E.2d 1360; see generally *Gaudynski v. Corbett* (1980), 81 Ill. App. 3d 910, 401 N.E.2d 1218.

B&O did refer to a portion of a deposition of Thomas Berns in its motion to dismiss the Dunns' second-amended complaint, and did file an affidavit in support of that motion. B&O's motion to dismiss the Dunns' third-amended complaint adopts the objections stated in B&O's motion to dismiss the Dunns' second-amended complaint. These actions would support a conclusion that B&O's motion to dismiss the Dunns' third-amended complaint was intended as a section 2—619 motion. On appeal, however, B&O has done an about-face and insists, both in its motion to strike the Dunns' brief, and in its brief, that its motion to dismiss was a section 2—615 motion. B&O does not refer to any affidavits or depositions in its appellate brief.

Whether to proceed by means of a section 2—615 or a section 2—619 motion to dismiss is the defendant's prerogative. Furthermore, a complaint must stand or fall on the basis of the allegations contained therein. At the motion to dismiss stage of the proceedings, the only function of affidavits and depositions from a plaintiff's perspective is to rebut any affidavits and depositions filed by the defendant if the defendant elects to proceed by means of a section 2—619 motion. Affidavits and depositions may not be utilized to remedy deficiencies in the counts of a complaint which do not state causes of action. Since B&O has elected to have its motion to dismiss considered as a section 2—615 motion, depositions may not be considered in determining whether the circuit court properly allowed this motion. We do not,

however, find that the references to deposition testimony contained in the Dunns' brief are so intertwined with the remaining contents of the brief that their inclusion cannot be remedied by striking them from the brief. We therefore strike from the Dunns' opening brief all references to deposition testimony, but deny B&O's motion to strike that brief in its entirety.

We must next consider B&O's contention that the Dunns have waived their arguments that various counts of their complaint state causes of action by failing to specifically address those counts in their opening brief. To this contention the Dunns respond that a circuit court's dismissal order must be deemed to be based on the defendant's motion to dismiss. They point out that a contrary ruling would have the effect of denying a litigant the opportunity to cure a defective complaint at the circuit court level to the extent that defects in the complaint are argued for the first time on appeal. They contend that they adequately argued the issue of "special circumstances" imposing a duty to warn of a stopped train at a railroad crossing in their initial brief, which they assert is the only contention raised in B&O's motion to dismiss which goes to the effectiveness of their entire third-amended complaint to state a cause of action.

Where, as here, the circuit court specifies no reasons for its dismissal of a complaint, every issue raised in the motion to dismiss and argued on appeal must be considered on review. (*Doner v. Phoenix Joint Stock Land Bank* (1942), 381 Ill. 106, 112, 45 N.E.2d 20, 23; *Powell v. Village of Mt. Zion* (1980), 88 Ill. App. 3d 406, 410 N.E.2d 525.) Generally, failure to raise a point in a party's opening brief results in waiver of that point for purposes of appeal. (107 Ill. 2d R. 341(e)(7).) We perceive no reason why this rule should not be applied to an appeal of a circuit court order which dismisses a complaint without specifying reasons for the dismissal. Orderly appellate procedure requires that under such circumstances counsel for the appellant argue in its opening brief each issue raised in the opposing party's motion to dismiss. This requirement does not impose any great burden on counsel for the appellant, since counsel will almost always have prepared for use in the circuit court proceedings arguments with respect to all points raised in the opposing party's motion to dismiss.

In their opening brief, the Dunns presented extensive argument concerning, *inter alia*, a railroad's duty where a grade crossing is ultrahazardous or more than ordinarily dangerous, a railroad's burden of pleading and proof with regard to the visibility to motorists of a railcar standing in a grade crossing, and what constitutes special circumstances requiring warning to motorists of the presence of a

railcar in a grade crossing. The Dunns also attempted to distinguish various cases relied upon by B&O in the circuit court proceedings. Moreover, they argued that the traditional rule pertaining to cases of this kind is inconsistent with the doctrine of comparative negligence and that whether violations of the ICC rules stated in their complaint proximately resulted in the decedent's injuries and death, and damage to decedent's property, is a question for the trier of fact to determine. For these reasons, we conclude that the propriety of the circuit court's dismissal of count V, and of count VII except for subparagraphs 6.D. and 6.E. thereof, of the Dunns' third-amended complaint, premised on alleged common law negligence, and of counts VI and VIII, premised on alleged negligent violations of duties imposed by ICC rules, is sufficiently argued in the Dunns' opening brief to permit us to consider whether the circuit court properly dismissed those portions of the complaint.

■ We reach a different result with respect to counts I through IV, however. These counts are premised on alleged wilful and wanton violations of both common law duties and duties imposed by statute and administrative regulations. B&O's motion to dismiss the Dunns' second-amended complaint alleges that counts I through IV do not set forth facts which constitute wilful and wanton misconduct. It also states, with respect to count III, that there are no factual allegations to support the allegation that decedent was in plain view of B&O's employees when they started the train, and that there are no factual allegations that B&O's employees knew or had reason to know that decedent was in the condition and position alleged in count III when they started the train. B&O's motion to dismiss the Dunns' third-amended complaint states that that complaint "suffers from every defect previously set forth in the Second Amended Complaint." The question of whether the facts alleged in counts I through IV constitute wilful and wanton misconduct as a matter of law is not discussed in the Dunns' opening brief although this issue was clearly raised in B&O's motion to dismiss their third-amended complaint. The Dunns' utter failure to present any written argument on appeal pertaining to the question of whether these counts contain legally sufficient factual allegations of wilful and wanton misconduct has resulted in the waiver of any error in the circuit court's dismissal of these counts.

■ The Dunns have also waived their contention that the circuit court erred in dismissing subparagraphs 6.D. and 6.E. of count VII. B&O's motion to strike and dismiss the Dunns' second-amended complaint, which B&O incorporated by reference into its motion to dismiss the Dunns' third-amended complaint, contains statements that

the Dunns' complaint alleges no factual basis for a duty on the part of B&O's train crew to look forward prior to starting the train, and that an interrailroad rule requiring an "audible warning signal" (prior to departure) was not intended for the protection of decedent under the circumstances alleged in count VII. The Dunns' opening brief contains no argument whatsoever concerning subparagraphs 6.D. and 6.E. of count VII. By not including argument concerning these subparagraphs in their opening brief, the Dunns waived any error in the circuit court's dismissal thereof.

■ The propriety of the circuit court's dismissal of subparagraph 6.F. of count VII also is not specifically argued in the Dunns' opening brief. However, the following statements appear in the Dunns' opening brief:

> "Plaintiffs urge the Court to renounce the concept that as a general rule there is no duty to warn of a stopped or traveling train at a crossing. They urge that the Court declare that the general rule is that a railroad has a duty to warn of stopped or traveling rail traffic at a crossing and that an exception to the rule is that if the rail traffic is plainly visible to a motorist who is exercising ordinary care, then there is no duty to warn of the traffic.

* * *

> In addition to the allegations of extrahazardous, the plaintiffs have also specifically alleged in each count of the complaint that the decedent was unable to see the stopped train until it was too late to avoid a collision as a result of the wrongful conduct complained of in each count of the complaint. As noted in the Statement of Facts, the plaintiffs alleged numerous items that diverted the motorist's attention thereby reducing the motorist's opportunity to observe whether or not there were approaching or standing trains. Plaintiffs respectfully suggest that these are sufficient allegations of special circumstances so as to impose upon the railroad a duty to warn. It is respectfully suggested that the duty to warn in this case is particularly high since this was a planned stop and that similar planned stops occurred frequently at the crossing. If the railroad knows it is going to occasionally block a crossing during hours of darkness, a duty arises sooner to warn of the obstruction as opposed to the case of a rare and unintended obstruction caused by a mechanical breakdown."

In the Dunns' response to a letter memorandum in support of B&O's motion to strike and dismiss the Dunns' second-amended complaint,

the Dunns argued that the presence of flares at the rear of the stopped train may have alerted decedent to its presence. In view of the argument in support of subparagraph 6.F. of count VII advanced in the circuit court, this subparagraph generally falls within the scope of the arguments made in the Dunns' opening brief. Therefore, the Dunns have not waived their contention that the circuit court improperly dismissed this portion of count VII.

■ We now turn to the question of whether the circuit court properly dismissed counts V, VI, VIII and the remaining portion of count VII of the Dunns' complaint. B&O first argues that various allegations contained in these counts are conclusory and should thus be disregarded for purposes of determining whether these counts state causes of action. The Dunns contend that B&O waived its contentions that various allegations of the Dunns' third-amended complaint are conclusory by failing to include such contentions in its motion to dismiss. However, B&O's motion to dismiss the Dunns' second-amended complaint alleges that the counts of that complaint do not set forth in sufficient detail the facts of the accident which resulted in decedent's death. As previously noted, B&O's motion to dismiss the Dunns' third-amended complaint states that that complaint suffers from the same defects "previously set forth in the second amended complaint." Under these circumstances, B&O did not waive its contention that various allegations contained in the Dunns' third-amended complaint are conclusory.

" '[A] complaint which does not allege *facts*, the existence of which are necessary to enable a plaintiff to recover does not state a cause of action and *** *such deficiency may not be cured by liberal construction* or argument.' (Emphasis added.)" (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 427, 430 N.E.2d 976, 986, quoting *People ex rel. Kucharski v. Loop Mortgage Co.* (1969), 43 Ill. 2d 150, 251 N.E.2d 211.) Conclusions which are based on factual allegations included in the same count may be considered in determining whether that count states a cause of action, but conclusions unsupported by statements of the specific facts on which they rest are irrelevant for this purpose. 88 Ill. 2d 407, 430 N.E.2d 976; *Segall v. Berkson* (1985), 139 Ill. App. 3d 325, 487 N.E.2d 752.

■ Only one factually sufficient allegation supporting a cause of action is necessary in order for a count to withstand a motion to dismiss (*Powell v. Village of Mt. Zion* (1980), 88 Ill. App. 3d 406, 410 N.E.2d 525 (Green, J., dissenting in part and concurring in part)); other allegations contained in the same count which do not support a cause of action are mere surplusage, which may be stricken at the re-

quest of the opposing party. Such surplusage does not in itself provide a basis for dismissal of a pleading. *In re Estate of Lipchik* (1975), 27 Ill. App. 3d 331, 326 N.E.2d 464.

■ B&O contends that the following allegations of negligent conduct contained in counts V and VII of the Dunns' third-amended complaint are conclusory:

> "A. Failed to provide automatic flashers or flares or a flagman to warn motorists of the presence of a stopped rail car notwithstanding the fact that the defendant periodically stopped rail cars on said crossing during hours of darkness, the vehicular traffic, the lack of lighting at the crossing, the grades of the crossing and the general condition of the crossing that the crossing was extrahazardous.
>
> B. Periodically stopped rail cars on the crossing during hours of darkness even though the defendant knew or should have known that the conditions of the crossing were such that it was difficult for a motorist to see a rail car parked at the crossing during the hours of darkness an adequate distance back from the crossing to safely stop before striking the parked rail car."

These allegations do not provide B&O with information as to conditions which created a duty on its part to provide automatic flashers, flares, a flagman, or other warning devices. It is often necessary for railroads to stop trains at unlighted crossings during hours of darkness; thus the alleged lack of lighting at the Smith Street crossing does not, without more, adequately inform B&O of conditions which required warning devices other than those provided. The general statements concerning the vehicular traffic, the grades of the crossing and the crossing's condition likewise do not inform B&O of specific facts which required warnings of stopped trains at the Smith Street crossing other than those which B&O provided. For these reasons, we hold that these allegations are conclusory.

■ B&O further contends that the following statement, also appearing in counts V and VII of the Dunns' third-amended complaint, is conclusory:

> "C. Failed to maintain the crossing in such a condition that a motorist's attention would not be unnecessarily diverted and in such a condition that unnecessary distractions were not placed upon a motorist's attention and in such a manner that a motorist would not receive the false illusion that a train was not blocking the crossing with the result that in violation of Ill. Rev. Stat., Ch. 114, Section 62, a motorist could not safely

cross the crossing during hours of darkness."

This allegation does not specify what conditions created the diversions and distractions of a motorist's attention or what conditions would cause a motorist to receive a false illusion that a train was not in the crossing. For this reason, it too is conclusory.

■■■ B&O next asserts that the following allegation that it negligently violated Illinois Commerce Commission Rule 204, which appears in counts VI and VIII of the Dunns' third-amended complaint, contains nothing but conclusions:

> "B. Raised the level of the tracks at the crossing with the result that the roadway approaches thereto were changed so as to violate the requirements of Rule 204 as promulgated by Illinois Commerce Commission General Order 138 with the result that a motorist such as the plaintiff's decedent would see under the rail car rather than see the rail car and thus be misled to believe that the crossing was unobstructed."

ICC Rule 204 provides:

> "(a) Unless the Commission otherwise specifically orders, the grade line of highway approaches to grade crossings hereafter established or substantially reconstructed shall be as follows: From the outer rail of the outermost track coincident with a tangent to the tops of the rails for about 24 inches, thence for a distance of 25 feet ascending or descending at a grade which shall not deviate more than 1% from said tangent, thence to the right-of-way line (and as far beyond as the Commission's control may extend in any case) at a grade not to exceed 5%. Where super-elevated track or tracks make strict compliance with this rule impractical the grade of approaches shall be constructed so as to provide the best vertical alignment under the circumstances with due regard to surface regularity.
>
> (b) The width, transverse contour, type of surface or pavement, and other characteristics of each such approach to a grade crossing shall be suitable for the highway and shall in every case conform to the requirements of good practice." 92 Ill. Adm. Code 1535.204 (1985).

When the above allegation is considered in view of the language of Rule 204, it cannot be said that it is conclusory. This allegation clearly describes a violation of Rule 204, and the language of Rule 204 is not so general that B&O could not have been advised by this allegation of the nature of the conditions at the Smith Street crossing which the Dunns claim resulted in decedent's injuries and death, and damage to decedent's property.

■■■ Finally, B&O contends that the following allegation of negligence, also contained in counts VI and VIII of the Dunns' complaint, is conclusory:

> "D. Raised one of the two sets of track at the crossing, knowingly failed to adjust or arrange for adjustment of the roadway approaches so as to conform them as nearly as practicable to Rules 203 and 204 in violation of Rule 207 as promulgated by Illinois Commerce Commission General Order 138 with the result that a motorist such as the plaintiff's decedent would see under the rail car rather than see the rail car and thus be misled to believe that the crossing was unobstructed."

ICC Rule 203 provides:

> "Every grade crossing hereafter established shall be construed and maintained in such manner that the surface of the roadway shall be substantially flush with the top of the rails. The surface of the roadway shall conform to the elevation of the rails for the entire area between rails and between tracks (where track centers are 15 feet or less) and for a distance of 24 inches beyond the outside of the outer rails of the outer tracks. In situations where super elevation in curved track through the crossing makes smooth continuous surface impractical, the surface of the roadway in the crossing area should be made as smooth as practicable. The crossing so constructed shall conform to the width of the roadway and shall include a reasonable width of usable shoulder, but in no case shall the width be less than 18 feet measured at right angles to the center line of the highway unless the Commission specifically authorizes a lesser width. At crossings where there are sidewalks, either the crossing proper shall include the sidewalk areas or separate sidewalk crossings of a width consistent with that of the sidewalk approaches shall be provided conforming with provisions of this section as to surface." (92 Ill. Adm. Code 1535.203 (1985).)

ICC Rule 207 provides:

> "At such time as tracks are raised through a highway grade crossing at the railroads instance it shall, unless otherwise ordered by the Commission, be the responsibility of the railroad to adjust or arrange for the adjustment of the highway approaches to conform as nearly as practicable with the grades specified in [Rules 203 and 204] hereinbefore, and in no case shall the grade of said approaches be increased by more than one per cent." 92 Ill. Adm. Code 1535.207 (1985).

The language of this portion of the Dunns' complaint, construed

in view of ICC Rules 203, 204, and 207, also is not conclusory. It adequately informs B&O that the Dunns claim damages on the basis of B&O's negligence in not maintaining the Smith Street crossing and approaches thereto at the level of smoothness required by Rules 203, 204, and 207. The requirements of these rules are not so general that B&O could not have been sufficiently advised of the facts on which the Dunns' claim for damages are premised.

■■ (In its petition for rehearing, B&O also asserts that subparagraph 6.F. of count VII is conclusory. This contention comes far too late to preserve the issue for review. (See *Schiff v. Schiff* (1960), 25 Ill. App. 2d 157, 165 N.E.2d 713.) B&O has thus waived its argument that subparagraph 6.F. of count VII of the Dunns' third-amended complaint is conclusory.)

■■ ■ We now turn to the question of whether the remaining allegations of the Dunns' complaint state causes of action based on violations of duties which B&O owed decedent. B&O provides extensive argument and citation of authority in support of its position that they do not. Simply stated, B&O's position is that if there is sufficient indication that a train is stopped at a crossing to enable a motorist, in the exercise of ordinary care for his own safety, to discover the train in time to stop his vehicle before colliding with the train, the railroad has no duty to provide additional warnings of the presence of the train at the crossing and therefore is not liable for damages sustained as a result of an automobile colliding with the train. B&O acknowledges that the pleading of special circumstances will take a case out of this general rule, and permit a complaint seeking damages stemming from a collision with a stopped train to stand, but contends the Dunns have pleaded no such special circumstances.

The Dunns argue that the rule that railroads have no duty to provide additional warnings of a stopped train's presence if the train is discernible through the use of reasonable care is not consistent with the doctrine of pure comparative negligence adopted in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886. They contend this rule should be replaced by a rule that railroads generally have a duty to warn of stopped or traveling train traffic at crossings, with an exception to this rule existing for those cases where rail traffic is plainly visible to a motorist exercising "ordinary care." The Dunns further argue that even under the traditional rule pertaining to cases of this type, their complaint contains sufficient allegations that special circumstances existed at the Smith Street crossing at the time of decedent's death to withstand a motion to dismiss.

The traditional rule pertaining to situations of the type involved in

the present case was succinctly stated by the court in *Petricek v. Elgin, J. & E. Ry. Co.* (1959), 21 Ill. App. 2d 60, 65, 157 N.E.2d 421, 423:

> "A train, either moving or standing upon a railroad crossing, is generally held to be adequate notice and warning of its presence to any traveler who is in the exercise of ordinary care for his own safety, and the railroad is under no duty to give additional signs, signals or warnings."

The necessary implication of this rule is that if the indications of a railcar's presence in a crossing are sufficient to alert an individual in the exercise of ordinary care for his own safety of the presence of the car, an individual not in the exercise of ordinary care for his own safety may not recover from injuries which he suffers as a result of a car-train collision at that crossing, even if additional warnings other than those provided would have alerted him to the presence of a train in the crossing in time to avoid a collision.

In its argument, B&O states that the rule permitting a motorist to recover damages resulting from an automobile being driven into a stopped train only under special or extraordinary circumstances was described as "well settled" nearly 50 years ago. (*Miles v. American Steel Foundries* (1939), 302 Ill. App. 262, 266, 23 N.E.2d 754, 756.) B&O further states that "what was true in 1939 remains true today." However, all is not the same today in the law of negligence. The 1981 adoption of the doctrine of pure comparative negligence (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886), brought about dramatic changes in many areas of tort law, including the law pertaining to car-train collisions of the type here at issue.

The inconsistency of the traditional rule pertaining to cases of this type with the doctrine of pure comparative negligence is illustrated by the example of a motorist speeding along a city street after dark at 50 miles per hour. Such a motorist obviously is not in the exercise of ordinary care for his own safety. If such an individual crashes his car into the side of a railcar stopped in a crossing protected only by crossbuck signs, he is, under the traditional rule, precluded from any recovery if the train would have been visible to a motorist in the exercise of ordinary care for his own safety. Yet warning devices better designed to get a motorist's attention—such as flashing lights—could have alerted the speeding motorist to the presence of the train and thus prevented the collision. It follows that in such a case, the lack of additional warning devices may be the proximate cause of the speeding motorist's collision with the train. A holding that such a motorist is under all circumstances barred from recovering because of his lack

of ordinary care for his own safety amounts to a holding that the motorist is barred from a recovering because he was contributorily negligent.

The fact that failure to provide greater warnings of the presence of a train standing in a crossing proximately caused injury to an individual not in the exercise of ordinary care for his own safety does not, of course, mean that a railroad is automatically liable for injuries sustained by such an individual. Rather, the dispositive questions are whether the railroad owed a duty to the injured individual under all of the relevant circumstances and whether the railroad breached that duty. Given the existence of a duty and a breach of that duty, a motorist's lack of ordinary care for his own safety is no longer a complete bar to his or her recovering damages in this type of situation, but is a factor which may result in a reduction of the motorist's damages award.

Whether the duty of care is owed an individual is a question which is determined by the courts as a matter of law, but whether a duty has been breached is a question which the trier of fact must decide. (*Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 456 N.E.2d 116.) Railroads have both a common law duty and duties imposed by administrative regulation to provide safe crossing points where streets, roads and highways intersect rail lines. (See *Carr v. Chicago & Northwestern Ry. Co.* (1948), 333 Ill. App. 567, 77 N.E.2d 857; 92 Ill. Adm. Code 1535.201 through 1535.365 (1985).) Although counts VI through VIII of the Dunns' third-amended complaint do not specifically state the duties which B&O owed decedent, it is apparent that those counts are premised on B&O's common law duty and duties mandated by administrative regulation to maintain the Smith Street crossing in such a state of repair as will permit safe passage of motor vehicles over the crossing.

B&O makes no argument that under the doctrine of pure comparative negligence, a jury question is not presented by the Dunns' nonconclusory allegations of negligent breaches of common law duties contained in count VII of the Dunns' complaint which fall within the scope of the arguments presented in the Dunns' opening brief. Count V of the Dunns' third-amended complaint contains nothing but conclusions. However, the nonconclusory allegations of count VII of the Dunns' complaint which are encompassed in the arguments contained in the Dunns' opening brief present jury questions as to whether B&O's alleged negligent breaches of duty on which they are premised proximately caused decedent's injuries and death, and damage to decedent's property.

■■■ We finally consider B&O's contention that counts VI and VIII of the Dunns' complaint do not state causes of action based on negligent violations of Illinois Commerce Commission (ICC) rules. B&O asserts that these counts do not state causes of action because decedent's injuries and death could not, as a matter of law, have proximately resulted from the alleged violation of ICC rules on which they are premised, and because persons in decedent's position at the time of his collision with its train are not among those intended to be protected by those rules.

The Dunns initially contend that B&O waived this issue by failing to raise it in its motion to dismiss. However, B&O's motion to dismiss the Dunns' third-amended complaint states, "The third amended complaint suffers from every defect previously set forth in the second amended complaint," and this matter is addressed in B&O's motion to dismiss the Dunns' second-amended complaint. Moreover, the Dunns did not cause to be included in the record a transcript or bystander's report with respect to the hearing on B&O's motion to dismiss their third-amended complaint. Therefore, we must presume that this issue was also argued at the hearing on B&O's motion to dismiss the Dunns' third-amended complaint. (*Fitzgerald v. Van Buskirk* (1974), 16 Ill. App. 3d 348, 306 N.E.2d 76 (doubt arising from incompleteness of record must be resolved against appellant).) For these reasons, we hold that B&O has not waived its contentions that counts VI and VIII of the Dunns' third-amended complaint do not state causes of action.

■■■ The Dunns also contend that the issue of whether these alleged statutory violations proximately caused decedent's injuries and death is a factual question which can only be resolved after all of the evidence is received. They further argue that the width of the roadway at the crossing could have had an important impact on decedent's ability to see the parked railcar in the crossing, for a wider roadway could have caused the railcar's undercarriage to be visible in the headlight beams of decedent's motor vehicle instead of being obscured by brush and weeds, and thus provided the decedent with a warning of the presence of the train. The Dunns also assert that the existence of weeds and brush along the right-of-way, as well as the existence of a rough crossing in violation of ICC rules, could have distracted a motorist from seeing and observing railcars in the Smith Street crossing. The Dunns finally state that the ICC rules of which they allege violations are intended to protect persons such as decedent, since they are directed toward providing safe passage for motorists at railroad crossings.

The ICC rules which form the basis for the allegations of breaches

of duties alleged in counts VI and VIII of the Dunns' complaint are Rules 203, 204, 205, and 206 (92 Ill. Adm. Code 1535.203, 1535.204, 1535.205, 1535.206) and Rule 4 of ICC General Order 106. Rules 203 and 204 have previously been set out in this opinion. Rule 205 provides:

> "Every railroad shall keep its right-of-way adjacent to its tracks reasonably clear of brush, shrubbery, trees, weeds, crops and all unnecessary permanent obstructions such as unauthorized signs and billboards for a distance of at least five hundred feet each way from every grade crossing where such things would materially obscure the view of approaching trains to travelers on the highway." (92 Ill. Adm. Code 1535.205 (1985).)

Rule 206 provides:

> "At every grade crossing where the duty of constructing or maintaining either the crossing proper or its approaches (or any part thereof) is by order of the Commission, or in any lawful manner, placed upon a railroad company, it shall be the duty of the railroad company to construct and maintain the crossing and approaches extending 24 inches outward from the outer rail of each track so that at all times they will be reasonably safe as to persons and property. In multiple track crossings where track centers are 15 feet or less, the areas between tracks shall be maintained by the railroad company." (92 Ill. Adm. Code 1535.206 (1985).)

Rule 4 of General Order 106 is no longer in force, and was not in force at the time of decedent's death, having been superseded in 1973 by the provisions of the Illinois Administrative Code pertaining to grade-crossing safety. 92 Ill. Adm. Code 1535.10, at 13754 (1985).

Section 5—201 of the Public Utilities Act provides in part:

> "In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any provisions of this Act or any rule, regulation, order or decision of the [Illinois Commerce] Commission, issued under authority of this Act, the public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom ***." (Ill. Rev. Stat. 1985, ch. 111⅔, par. 5—201.)

Section 5—201 will support an action for damages caused by a violation of ICC rules or other provisions of the Public Utilities Act, but will not support an action for injuries caused by violations of other

statutory provisions. (See *Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 384 N.E.2d 323.) In order to recover damages on the basis of a violation of a safety statute or rule, a plaintiff must prove that the violation proximately caused him to sustain injuries and that the statute was intended to protect a class of persons to which he belongs from the kind of injuries which he suffered. ICC rules such as those which form the basis for counts VI and VIII of the Dunns' complaint are designed to protect the general public, as opposed to a special class of persons, and many of them are merely declaratory of the common law. 74 Ill. 2d 213, 384 N.E.2d 323.

It is manifest that the purpose of Rules 203, 204, and 206 is to insure that railroad crossings are safe for purposes of public passage and particularly that they are smooth. It cannot be said that protecting the public from being distracted by rough surfaces of crossings and not thereby observing trains at crossings, or protecting the public from obtaining a false illusion that a train is not present at a crossing due to an unusually steep grade at the crossing, are not among the purposes of these rules. Under the circumstances of this case, whether conditions at the Smith Street crossing were violative of these rules and if so, whether the violations proximately caused decedent's injuries and death, and damage to the decedent's property, are questions for the trier of fact to determine.

At first glance, Rule 205 seems to apply only to foliage which would obscure a motorist's view of approaching trains. However, the ultimate purpose of this rule appears to be the general improvement of visibility at grade crossings, so that motorists will have a better opportunity to see trains at or in the vicinity of crossings, regardless of whether they are standing or in motion. When Rule 205 is viewed in this light, foliage growing so close to a crossing that a motorist's view of the undercarriages of a railroad car standing in the crossing would be obscured by the foliage is a condition from which the ICC sought to protect the public in enacting this rule. It follows that whether decedent's injuries and death, and damage to the decedent's property proximately resulted from a violation of Rule 205 is also a question for the trier of fact.

Giving due deference to the requirement that a complaint is to be construed strictly against the pleader (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976), we hold that counts VI and VIII contain sufficient allegations of violations of ICC rules to create jury questions as to whether those violations existed, and if so, whether they proximately caused decedent's injuries and death, and damage to decedent's property.

To recapitulate, the Dunns have waived any arguments that counts I through IV and subparagraphs 6.D. and 6.E. of count VII were improperly dismissed, and we therefore affirm the circuit court's dismissal of those portions of the Dunns' third-amended complaint. We also affirm the dismissal of count V and of subparagraphs 6.A., 6.B., and 6.C. of count VII, which consist of nothing but conclusions. The remaining portions of count VII present a question for the trier of fact, and counts VI and VIII contain sufficient nonconclusory allegations of negligent violations of ICC rules to withstand a motion to dismiss. For these reasons, we reverse the circuit court's judgment in part and remand this cause for further proceedings consistent with the views expressed herein.

Affirmed in part, reversed in part, and remanded with directions.

JUSTICE LUND, specially concurring:

I concur with Justice Spitz' opinion. As to counts VI and VIII, I suggest that if plaintiffs do prove the vision was hampered by the grade of the crossing, then the safety rule is relevant. As to the safety rule relating to the lateral view, I cannot, at this point, say an approaching motorcyclist would not have a better chance of seeing the stopped railroad cars if the unobstructed lateral view was a proper width. Is it not conceivable that an approaching vehicle operator would look to the right and left for signs of train lights? Isn't it possible that a vehicle operator would have a better chance of seeing the stopped train, even in the darkness of night?

Red herrings or not, at this stage of the pleadings, it appears fact questions are presented by counts VI and VIII.

JUSTICE GREEN, concurring in part and dissenting in part:

I concur in the decision of the majority to affirm the portion of the judgment of the circuit court dismissing counts I through V of the complaint and to reverse the portion of the judgment dismissing count VII. I cannot agree that counts VI and VIII, based upon violations of Illinois Commerce Commission rules, state a cause of action. Accordingly, I dissent from the decision to reverse the portion of the judgment dismissing those counts.

My disagreement with the majority stems from their conclusion that allegations of violations of various safety rules of the Illinois Commerce Commission constitute allegations of negligence on the part of B&O which could be a proximate cause of the collision of the vehicle with the railroad car. The majority correctly sets forth that an

injured party cannot recover for a defendant's violation of a safety rule unless: (1) the violation proximately caused plaintiff's injury; (2) plaintiff belonged to a class of persons whom the rule was intended to protect from injury; and (3) the kind of injury suffered by plaintiff was the kind of injury which the rule sought to prevent. Logic defies any conclusion that any of the safety rules alleged were enacted with any thought of avoiding collision of motor vehicles with stopped trains or that any violation of these rules could be a proximate cause of any such collision.

Requirements as to the level of tracks in relation to the level of the roadway at a crossing or requirements as to the slope of the approaches to a crossing are logically enacted to make the crossing easier upon the vehicle, to prevent the vehicle from becoming struck on the tracks, to enable the driver of the vehicle to cross the tracks more quickly and, in the case of the grade of the approach, to give the driver a better view up and down the tracks before crossing. No indication has been given that the purpose of either of the regulations was to prevent an approaching driver from failing to see an encroaching railroad car because the driver might see light by looking under the car and assume that the crossing was free. Actually, a steeper grade at the crossing would cause the driver to slow down and would aid in the stopping of the vehicle prior to contact with the railroad car.

Similarly, requirements as to the width of the crossing or as to the necessity of having a desirable lateral view at the crossing could not have been enacted to deter a collision between an approaching vehicle and a railroad car blocking the crossing. Either a narrow crossing or one with a bad view would tend to slow the driver of the approaching vehicle and tend to make a collision less likely. It is inconceivable that a driver would come up to a crossing on a dark night and, because of an impaired lateral view, fail to slow down and fail to see a vehicle directly ahead.

The issues of the rule violations are red herrings. The issues in the case are: (1) whether the B&O was negligent in leaving the railroad car in the crossing under the illumination then present; (2) whether B&O was negligent in starting the train after the collision; and (3) the extent to which an award, if any, should be reduced because of contributory negligence of the driver, if any. The trial court properly dismissed counts VI and VIII. I would affirm that ruling.