ILLINOIS STATE BOARD OF ELECTIONS, Petitioner, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents.

Fourth District  No. 4—96—0599

Argued May 21, 1997.—Opinion filed August 19, 1997—Rehearing denied September 15, 1997.

STEIGMANN, P.J., dissenting.

A.L. Zimmer (argued) and Vincent James Tenuto, Special Assistant Attorneys General, of Chicago, for petitioner.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Karen J. Dimond (argued), Assistant Attorney General, of counsel), for respondent Human Rights Commission.

Mary Lee Leahy (argued) and Cheryl R. Jansen, both of Leahy Law Offices, of Springfield, for respondent Celia Dart.

JUSTICE GREEN delivered the opinion of the court:

■ On September 1, 1988, respondent, Celia Dart, an employee of petitioner, the Illinois State Board of Elections (Board), filed a complaint with respondent, the Illinois Human Rights Commission (Commission), contending she was discriminated against by the Board because she, a female, received less pay than Mark Kloever, a male, for doing similar work. She claimed a violation of section 2—102(A) of the Illinois Human Rights Act (Act) (Ill. Rev. Stat. 1987, ch. 68, par. 2—102(A)), which states as follows:

"It is a civil rights violation:

(A) Employers. For any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or *terms*, privileges or *conditions of employment on the basis of unlawful discrimination*." (Emphasis added.)

Section 1—103(Q) of the Act describes "[u]nlawful discrimination" as:

"[D]iscrimination against a person because of his or her race, color, religion, national origin, ancestry, age, *sex*, marital status, handicap or unfavorable discharge from military service as those terms are defined in this Section." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 68, par. 1—103(Q).

After hearing evidence, the Commission issued an order on June 26, 1996, finding the Board violated the Act by discriminating against Dart in regard to her salary because of her sex and awarded her (1) $25,257.42 in back pay, (2) $1,916.89 to be paid to the Social Security Administration as due from the additional salary, (3) $2,511.38 to be similarly paid to the Illinois State Employees Retirement System, and (4) $17,132.50 for attorney fees and $287.63 for court costs. The Board has taken administrative review to this court. 775 ILCS 5/8—111(A)(1) (West Supp. 1995).

The parties dispute the allocation of the burden of proof, but we conclude the Commission found that, even under the allocation we and the Board deem to be correct, Dart is entitled to the relief granted. The decision of the Commission was not contrary to the manifest weight of the evidence regardless of what allocation was required. We do not find any reversible error in the introduction of evidence. We disagree with the Commission in regard to its appraisal of the importance of the college degree of Board employee Kloever, to whom Dart compared herself, but also find no reversible error in that regard. Accordingly, we affirm.

We must first determine what issues are before us. In the Board's brief it listed three matters as being issues. The first was whether the Commission's determination that Dart and Board employee Kloever performed equal work was contrary to the manifest weight of the evidence. The second such issue was whether the Commission's determination that the Board's stated reason for giving Kloever a higher salary than Dart was not worthy of belief was contrary to the manifest weight of the evidence. The last stated issue was whether the Commission erred relative to the equality of work between Dart and Kloever and the Board's nondiscriminatory reasons for paying Kloever a higher salary than Dart.

In the Commission's brief, it contended the Board raised an issue as to whether the Commission applied the proper formula for the burden of proof. The Board had not referred to this issue in its statement of issues or its points and authorities. However, in a summary of its argument, the Board stated that if the complainant establishes that "she is a member of a protected class, based on gender, that she performs substantially equal work to a comparator not of the same gender class, and that she is paid at a rate less than the compara-

tor," she has established a *prima facie* case and the burden shifts to the respondent to articulate a proper reason for the wage differential.

The summary then stated that if the respondent articulates "one or more defenses the burden of production again shifts back to the complainant to prove that the reasons offered by the respondent are pretextual," and Dart failed to make this proof. Later, in the Board's detailed argument portion of its brief, the Board stated the Commission "appears to have ignored the requirement that the complainant prove by a preponderance of the evidence that the non-discriminatory reason articulated by the respondent for the difference in salary was a mere pretext." The argument then stated the Commission appears to have required the Board to "bear the burden of proof that its hiring decision was non-discriminatory." The Board then raised this issue in more detail in its reply brief. Dart maintains that because the question of the allocation of burden of proof was not raised in the Board's statement of issues, it is not properly before us.

■ Because of the importance of the allocation of burden of proof, we examine the question of whether it was properly raised in detail. Supreme Court Rule 335(i)(1) states, in part, that "[i]nsofar as appropriate, the provisions of [Supreme Court] Rules 301 through 373 (except for Rule 326) are applicable" for proceedings in the appellate court for administrative review. 155 Ill. 2d R. 335(i)(1). Supreme Court Rule 341(e) concerns appellant's briefs and subsection 7 therein states, in part: "[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." 155 Ill. 2d R. 341(e)(7); see *Dunn v. Baltimore & Ohio R.R. Co.*, 162 Ill. App. 3d 97, 105, 515 N.E.2d 1027, 1033 (1987); *Gale v. Hoekstra*, 59 Ill. App. 3d 400, 410, 375 N.E.2d 456, 464 (1978).

■ In *People v. Saulsburry*, 178 Ill. App. 3d 857, 864, 533 N.E.2d 1154, 1158 (1989), the Second District Appellate Court stated:

> "Finally, defendant 'notes' in a cursory, one-page argument in his brief that the prosecutor made improper comments in his closing arguments. Contrary to Supreme Court Rule 341(e) (113 Ill. 2d R. 341(e)), the issue was not listed in the statement of issues presented portion of the brief or mentioned in the caption of the issues in the argument portion of the brief, and is therefore waived. Further, the issue is also waived for failure to raise the issue in the written post-trial motion. *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124[, 1129-30]."

The foregoing is the only authority we have found to deem an issue before this court waived when, as here, it is not set forth in the statement of issues or captioned in regard to the argument. In other cases, such as *Dunn* (162 Ill. App. 3d at 105, 515 N.E.2d at 1033) and *Gale*

(59 Ill. App. 3d at 410, 375 N.E.2d at 464), the court speaks of waiver occurring when the issue is not raised in any portion of the appellate brief. We conclude the latter is the rule. Stating the points to be relied upon for reversal in the statement of issues in the brief is highly desirable and makes the argument of the brief more logical and persuasive, but we deem the Board's brief here barely sufficient to raise the issue of the allocation of burden of proof.

The particulars of Dart's complaint before the Commission were as follows: (1) Dart was hired in December 1973; (2) since December 1984 and continuing, Dart had not received pay equal to Kloever for the performance of her duties as an "Election Specialist II"; (3) Dart's supervisor was a female and her division included five election specialists—three female and two male; (4) Mark Kloever (a male) and Dart were "Election Specialist IIs" (at the time the complaint was filed) and performed the same duties; (5) Kloever was hired as a trainee in 1984 with a beginning salary of $19,000; (6) Kloever had been with the Board for four years and Dart had been with the agency for eight years; (7) Kloever made $4,000 to $5,000 per year more than Dart; and (8) Dart's employer did not give her special assignments, which would have helped in her evaluations.

The evidence was heard before an administrative law judge (ALJ). Dart testified (1) she completed high school in 1947 and took a six-month course at Universal Career College; (2) she took a refresher business course in 1971; (3) her work experience included a bookkeeping job for $1^1/2$ years, 3 years with the Illinois Department of Public Aid calculating vouchers, part-time for 3 years with the Internal Revenue Service as a cashier, and working for various political campaigns; (4) her campaign experience was primarily as manager for her husband's campaign when he ran for commissioner of the City of Springfield in 1963; (5) she also worked on other local campaigns but was not involved in the finances of those campaigns; (6) her next employment was with the Board; and (7) she has worked continuously for the Board since December 1973.

Dart further testified she was promoted to the positions of "Election Specialist I" (Specialist I) in 1981, "Election Specialist II" (Specialist II) in 1985, and "Election Specialist III" (Specialist III) in 1989 after she filed her complaint. Dart said Kloever was originally hired in 1984 as an "Election Specialist-Trainee" (Specialist-Trainee), and he later became a Specialist I, II, and III. Dart testified she and Kloever were promoted to Specialist II at about the same time and she became a Specialist III a few months prior to Kloever. From her observation, it appeared she and Kloever performed the same duties. Dart testified that at the time of the hearing her primary duty was to

insure the political committees assigned to her complied with the campaign disclosure provisions of the Election Code (Code) (10 ILCS 5/9—1 *et seq.* (West 1994)). She said she did this by reviewing the submitted reports of the 200 committees for which she was responsible.

Dart introduced a number of exhibits in support of her case, including the job "specifications" for the various jobs she and Kloever have held. These exhibits indicated the duties of an election specialist include, *inter alia*, analysis and review of legislative rules and regulations related to elections, research, investigation of complaints, review of nominating petitions, and assisting candidates and committees in complying with the Code. According to these exhibits, the educational requirements for performing the duties of Specialist-Trainee and Specialist I, II, and III include "knowledge, skill, and mental development equivalent to completion of four years['] college with courses in public administration, government or communications."

Joe McFadden, testifying for the Board, stated he was director of support services for the Board and had been for 16 years. He stated Kloever was initially hired in 1984 as a Specialist-Trainee at a salary of $1,622 per month. At that time, Dart was a Specialist I and had held that position for three years with a salary of $1,443. McFadden agreed the duties and percentage of time devoted to each of those duties for a person holding the position of Specialist III would be "very similar." He stated, however, that two people with the title of Specialist III could have "considerably different" duties and work assignments.

McFadden also testified that the decision as to whether to hire Kloever and what his salary would be was made by Barbara Mason and Ronald Michaelson. McFadden said he calculated Kloever's salary would be 10.2% over his previous salary and anything over 10% required approval from Central Management Services, a state agency. According to McFadden, two males and five females had been recommended for hire as "Election Specialists" at a rate of pay above 10% of their previous salaries.

Michaelson, Executive Director for the Board, testified he has worked for the Board since 1974. He stated Dart was hired in 1973 as an "Election Technician II," which was a "clerical kind of position." Michaelson indicated Kloever was hired in 1984. Most of Michaelson's testimony consisted of an offer of proof that was rejected, and no contention is raised on review that the rejection was error.

Mason, director of campaign disclosure for the Board, testified she was the general supervisor of the Springfield office (where Dart

was employed). She identified a "position description" applicable to the Specialist III position and stated there are five Specialist IIIs in her division. She said the tasks assigned to those five people are "not necessarily" identical. She also said the Specialist IIIs do not all have the same caseload, and Kloever has additional duties of federal committees that the other Specialist IIIs do not have. Mason stated Kloever has had this additional responsibility since "shortly" after he started working for the Board. Prior to Kloever taking over that responsibility, Dart did that work. According to Mason, Kloever received the assignment because Dart did not want to do it any longer. Mason further described Kloever's responsibilities to include the publication of statistical data. She also described special projects she had assigned to Dart. She agreed both Kloever and Dart had caseloads of around 200 files.

Kloever testified regarding his employment at the Board for the previous eight years. He stated he has a bachelor of science (B.S.) degree in business and securities analysis, and he took courses in accounting, finance, management, administration, economics, mathematics, and statistics. He stated he owned a furniture business after graduation and operated that business for 12 years. He said he also ran a restaurant and was involved in several political campaigns.

Kloever identified his application for employment with the Board and indicated his salary immediately prior to being hired was $1,500 per month. He requested a salary of $1,660 per month, which was a 10% increase over his previous salary.

In regard to salary differentials, the record shows that when Kloever was hired he was given a salary of $1,662 per month, and at that time Dart was receiving $1,443 per month. This disparity remained fairly constant and, by 1995, Kloever was receiving $2,717 per month while Dart was receiving $2,400 per month.

■ The Board's theory in regard to the allocation of burden of proof in a case of this nature is that the appropriate procedure is that used in proceedings under title VII of the Civil Rights Act of 1964 (title VII) (42 U.S.C. § 2000e *et seq.* (1994)), which provides, in relevant part:

> "It shall be an unlawful employment practice for an employer—
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his *compensation*, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex*, or national origin[.]" (Emphasis added.) 42 U.S.C. § 2000e—2(a)(1) (1994).

As set forth in *Texas Department of Community Affairs v. Bur-*

*dine*, 450 U.S. 248, 256-58, 67 L. Ed. 2d 207, 217-18, 101 S. Ct. 1089, 1095-96 (1981), under title VII, the complainant must first present a *prima facie* case of discrimination. If that is accomplished, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 678, 93 S. Ct. 1817, 1824 (1973). If that is not done, the complainant is entitled to recover. If such a reason is articulated, the complainant must then prove by a preponderance of the evidence that the reasons offered by the employer were merely pretext for discriminatory actions. Thus, the ultimate burden of persuasion is with the complainant.

■ The Commission's theory is that which federal courts have applied in cases brought under section 206(d)(1) of the Equal Pay Act of 1963 (Pay Act) (29 U.S.C. § 206(d)(1) (1994)), which states, in pertinent part:

> "No employer *** shall discriminate *** *between employees* on the basis of *sex* by paying *wages* to employees *** *at a rate less* than the rate at which he pays wages to employees of the opposite sex *** for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." (Emphasis added.) 29 U.S.C. § 206(d)(1) (1994).

Under this legislation, if the complainant establishes by a preponderance of the evidence that an employer is paying members of one sex more than members of the other sex for similar work, the burden shifts to the employer to establish by a preponderance of the evidence that the differential is based upon (1) a seniority system, (2) a merit system, (3) a system that measures wages by the quality or quantity of production, or (4) a system "based on any other factor other than sex." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195-96, 41 L. Ed. 2d 1, 10-11, 94 S. Ct. 2223, 2228-29 (1974). Accordingly, following the rule under the Pay Act, the burden of proof can shift to the employer.

In cases brought under the Act for discrimination in pay based on sex and where apparently no issue was raised as to the allocation of burden of proof, this court has followed the Pay Act standard. See *Northtown Ford v. Human Rights Comm'n*, 171 Ill. App. 3d 479, 487, 525 N.E.2d 1215, 1221 (1988); see also *McCullar v. Human Rights Comm'n*, 158 Ill. App. 3d 1011, 1020, 511 N.E.2d 1375, 1381 (1987). The Commission has also followed this rule in numerous other cases, including, *e.g.*, *Flora v. Clark County Publishing Co.*, 48 Ill. Hum. Rights Comm'n Rep. 3 (1989). However, subsequent to *Northtown Ford* and *McCullar*, in a case brought under the Act concerning age

discrimination in hiring, the Supreme Court of Illinois applied the title VII test for the allocation of burden of proof and held the Commission could properly determine that the employer's stated reason for not hiring the complainant there was not a pretext. The supreme court stated that court would follow the "framework" of title VII in deciding cases of employment discrimination under the Act. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178, 545 N.E.2d 684, 687 (1989).

As *Zaderaka* was decided after *Northtown Ford* and *McCullar*, we deem that its rationale should be followed here. We see no valid reason why the burden on the employer should be greater in cases involving pay based on sex than in cases brought under the Act for other types of discrimination. Under federal law, a different allocation of the burden of proof exists for Pay Act cases than for those under title VII, but there, at least, different acts are involved, while under Illinois law all types of discrimination are covered by the Act.

The order of the Commission is somewhat ambiguous as to the way it allocated the burden of proof of the alleged discrimination by the Board, but it did state:

> "After the respondent has articulated its reason, the complainant must show that this reason is a pretext for unlawful discrimination. Pretext can be shown by demonstrating that the proffered reason is unworthy of belief. [*Zaderaka*], 131 Ill. 2d 172, 545 N.E.2d [684] (1987). The complainant has argued that the respondent's reason is pretextual. It is appropriate for us to examine each of Kloever's qualifications separately in light of the complainant's arguments." *In re Celia J. Dart*, Ill. Hum. Rts. Comm'n Rep. 1989SF0094, at 14 (June 26, 1996) (hereinafter HRC's order of June 26, 1996).

The order then stated, "[t]he complainant has successfully proven that the [Board's] reason [was] a pretext for unlawful discrimination." HRC's order of June 26, 1996, at 16. A similar finding was made on pages 17 and 20 of the order.

■ The burden of proof as to the first step of both the title VII approach and that under the Pay Act is virtually the same, and although the Board contends Dart's proof in this issue was insufficient, no contention was made that application of the wrong burden of proof was involved in regard to that step. At the second step, under the Pay Act procedure the employer must prove the differential is based upon a valid reason, while under the title VII procedure the employer only has to "articulate" a legitimate reason for its action. Because of the all-encompassing fourth factor of the *Corning Glass Works* reasons for an employer's actions, little difference exists be-

tween the factors an employer has to prove under the Pay Act approach or "articulate" under the title VII approach.

The Pay Act approach has no third step to it, and the employer loses if a *prima facie* case was made and the employer has not proved a valid reason for its action. The employee has a burden if the third step is reached, but if the employee does prove by a preponderance of the evidence that the reasons the employer was able to "articulate" were pretextual, no way exists by which the employer cannot be liable. Thus, on the findings here, if supported by the evidence, Dart was entitled to recover even if the Commission's order indicates uncertainty as to the allocation of burden of proof or even if the Commission recited the wrong burden of proof. For the same reason, the fact that the Commission recited the *Corning Glass Works* factors as being significant or as something the Board was required to prove does not negate the controlling factor of the Commission's finding that the Board's reasons were pretextual.

The evidence was such that a reasonable trier of fact could find for Dart using the title VII approach. Her pay was lower than that of Kloever. A trier of fact believing Dart and discounting some of Kloever's testimony could have found their duties were substantially similar with both receiving reports from approximately 200 committees. Kloever needed to know some federal law and regulation, but Dart had previously handled that task. The evidence indicated Kloever's extra work (reports from federal committees) was likely more complex than that of Dart. Dart relies partly upon the job description to prove the similarities of her work with that of Kloever, but job descriptions are not determinations of the equality of work (*Epstein v. Secretary, United States Department of Treasury*, 739 F.2d 274, 277 (7th Cir. 1984)).

No witness testified that Kloever's B.S. degree, business experience, or any other qualifications were considered in determining his salary. Evidence indicated that another Specialist III, Sharon Stewart (a female), had a master's degree in political science; yet, in 1991, she received $2,601 per month, which was slightly less than Kloever was paid. The evidence was clear that the position of Specialist III did not require a college degree as long as the occupant of the job had the knowledge, skill, and mental development equivalent to four years of college. The trier of fact could conclude from the evidence that a person could do the required work of the job without a college degree. While Kloever's previous business experience would, no doubt, be helpful, that experience was not directly tied by the evidence to any function he performed.

We also express some concern with the reasoning of the Commis-

sion in downplaying the significance of Kloever's B.S. degree. The Commission treated it as being insignificant because one without such a degree could do a passable job. The Commission stated, "[i]f a degree is not required to effectively do the tasks required of this position, then it does not follow that the mere fact of having one warrant[ed] a higher salary." HRC's order of June 26, 1996, at 14. Such a theory concedes too much to mediocrity and discourages the hiring of people of the highest quality. A college education is a broadening experience enabling people to better respond to new and complicated situations.

The tasks to be performed here by Dart and Kloever were not so simple that the college experience would not be greatly helpful. The fact that a reasonably proficient job can be done by those without a degree is no reason to give little consideration to the degree. Consider the following situation in a college setting: A group of teachers with only B.S. degrees are teaching a subject and only such a degree is required by the rules of the institution. Would it be discriminatory to give a much higher salary to a new teacher who has a doctorate degree even if the existing teachers have been doing a satisfactory job?

■ Finally, we consider the Board's complaint of the action of the ALJ in denying admission into evidence of two exhibits: (1) a document entitled "Illinois Money in Elections in 1990" by Kloever and (2) a "Computer Instruction Booklet" by Christine Hennessey, a Specialist III. The former was probative of the skills brought to the job by Kloever, and it was a breach of discretion to refuse the exhibit. However, it was not reversible error. The other document supported the testimony of Mason and explained the additional duties assigned to the election specialists. The ALJ felt that matter had been sufficiently covered by direct testimony. Refusing the second exhibit was within the discretion of the ALJ.

Accordingly, for the reasons stated, we affirm the order of the Commission.

Affirmed.

COOK, J., concurs.

PRESIDING JUSTICE STEIGMANN, dissenting:
I respectfully dissent.
All litigants—even state agencies—are entitled to a fair trial. When the trier of fact in a close case (such as this one) applies the wrong burden of proof, the party victimized by this error has not received a fair trial.

The majority asserts that "[b]ecause of the all-encompassing fourth factor of the *Corning Glass Works* reasons for an employer's actions, little difference exists between the factors an employer has to prove under the Pay Act approach or 'articulate' under the title VII approach." 291 Ill. App. 3d at 193-94. However, no matter how the majority attempts to show similarities between factors, the "bottom line" difference between the burden of proof the Commission erroneously applied and the burden of proof it should have applied remains stark: the erroneous burden of proof the Commission used placed the ultimate burden upon the Board to show it had *not* improperly discriminated; the correct burden would have left the burden of proof on the complainant, Dart, to show that the Board had improperly discriminated.

The majority also writes that complainant Dart should prevail "even if the Commission's order indicates uncertainty as to the allocation of burden of proof or even if the Commission recited the wrong burden of proof." 291 Ill. App. 3d at 194. But why should that be? Given (1) the closeness of this case, (2) the Commission's improper downplaying of the significance of Kloever's B.S. degree (well described by the majority opinion), and (3) the ALJ's erroneous refusal (which the Commission ratified) to receive certain documents into evidence, why should we guess what the result would be in this case if the trier of fact applied the *correct* burden of proof? Would the majority be as willing to affirm if, in a civil bench trial, the trial court erroneously stated that the burden was on the defendant to prove by a preponderance of the evidence that the claims plaintiff made were *not* true? I doubt it, yet that seems to be the result here.

By definition, in a case in which the evidence is evenly balanced (like the present one), whoever has the burden of proof loses. Thus, the Commission's misapplying the burden of proof in this case may well have been dispositive.

On the merits, the Commission's decision simply does not work in a practical sense. Once an employee is hired into the state system, the original hire salary "sticks like glue" in the sense that it provides the base for any merit or general increase in pay. Once in the system, a pay increase accompanying a promotion is—in most cases—limited to the lowest step in the new grade (see, *e.g.*, 80 Ill. Adm. Code § 310.80(e)(1) (1996)). Thus, once an employee starts at a lower salary, it will likely follow her to retirement; likewise, if she starts at a higher salary.

The mechanism of allowing the hiring authority to pay more *on initial hiring* to better qualified or more experienced individuals enables the hiring entity to upgrade the quality of new hires. But

once they are hired at higher salaries, those salaries may well be higher than those of lower-paid persons in the same or similar jobs throughout the remainder of their employment. This system is gender neutral.

According to the briefs, two men and five women received higher than minimum starting salaries. This does not have the makings of a gender pay discrimination lawsuit.

Dart's real complaints seem to be that (1) she *started* at the salary she did; and (2) a salary mechanism exists that permits others to be hired in at higher salary levels. However, it appears fortuitous that she could find a male who benefited from this mechanism upon whom to base her discrimination claim.

By virtue of the Commission's decision, plaintiff has used the Act to defeat the mechanism put in place to attract those with superior experience and education. This result should raise a red flag throughout state government because many people who started working "on the cheap," *i.e.*, at the minimum, now might be able to use the Commission to get a hefty raise.