(No. 66326.—

ARLEY DUNN *et al.*, as Co-Adm'rs of the Estate of Lyle E. Dunn, Deceased, Appellees, v. THE BALTIMORE & OHIO RAILROAD COMPANY, Appellant.

*Opinion filed March 29, 1989.*

352

WARD and CALVO, JJ., took no part.

James C. Kearns and John D. Flodstrom, of Heyl, Royster, Voelker & Allen, of Urbana, for appellant.

Phebus, Tummelson, Bryan & Knox (Joseph W. Phebus, of counsel), and Johnson, Frank, Frederick & Walsh, all of Urbana, for appellees.

Cassidy & Mueller, of Peoria (David B. Mueller and

John E. Cassidy III, of counsel), for *amicus curiae* Illinois Association of Defense Trial Counsel.

JUSTICE STAMOS delivered the opinion of the court:

On October 29, 1983, at approximately 9:30 p.m., Lyle E. Dunn, operating a motorcycle, collided with the side of a railroad car stopped at a crossing and was killed. His parents, Arley Dunn and Nada Lou Dunn (plaintiffs), filed an eight-count third amended complaint against defendant Baltimore & Ohio Railroad Company, alleging negligence and wilful and wanton conduct. The circuit court of Douglas County allowed defendant's motion to dismiss the third amended complaint and dismissed the complaint with prejudice. The appellate court, one justice dissenting in part, affirmed in part and reversed in part, and remanded with directions. (162 Ill. App. 3d 97.) We granted defendant leave to appeal. Plaintiffs have cross-appealed. We granted leave to the Illinois Association of Defense Trial Counsel to file an *amicus curiae* brief in support of the defendant's position. For the reasons that follow, we affirm in part and reverse in part.

## I. PROCEDURAL BACKGROUND

In the circuit court, defendant filed a "Motion to Strike and Dismiss and in the Alternative Motion for Judgment on the Pleadings." The motion was directed to plaintiffs' second amended complaint and was supported by argument and citation to authority. Apparently, oral arguments were heard on the motion. Subsequently, at the request of the circuit court, the parties submitted briefs. The circuit court dismissed the second amended complaint, expressly adopting as its reasons for dismissal "the reasoning set forth in defendant's brief."

Plaintiffs were given leave to file a third amended complaint, which differs from the previous complaint only in certain immaterial respects. Defendant filed a motion to dismiss the third amended complaint. In support of the motion, defendant briefly summarized the arguments it had made previously, and further stated that "the Third Amended Complaint suffers from every defect previously set forth in the Second Amended Complaint and should be dismissed with prejudice." After hearing arguments on the motion, the circuit court allowed the motion to dismiss and dismissed the third amended complaint with prejudice. No reasons for the dismissal were given.

The appellate court ruled, and we agree, that defendant in its motion to dismiss the third amended complaint (motion to dismiss) incorporated by reference its motion to dismiss the second amended complaint. In this court, plaintiffs repeatedly suggest, particularly on the issue of whether they waived certain alleged errors, that they had no way of knowing what issues to address in the appellate court because defendant's motion to dismiss was "general and non-specific." It is clear from the procedural history of the motion that we have set out, that the motion was extensively briefed and argued by the parties in the circuit court. Thus plaintiffs' contention lacks merit.

## II. THE COMPLAINT

Each count of the third amended complaint (complaint) alleges that plaintiffs' decedent was operating a motor vehicle in a northerly direction across the Smith Street crossing of the defendant's tracks in Newman, Illinois, when his vehicle collided with a stopped train operated by defendant. According to the complaint, decedent was unable to see the train "until it was too late to avoid the collision due to one or more of the acts set

forth hereinafter or a combination thereof." Various counts of the complaint also allege that after the collision, decedent was still alive, and that thereafter, defendant negligently, or wilfully and wantonly, started the train, running over decedent and killing him. Four of the counts are survival actions, and four are wrongful death actions. The opinion of the appellate court sets forth in detail the substantive allegations of each count, which we will repeat only to the extent necessary to explain our disposition.

## III. ANALYSIS
### A. Counts I-IV

Counts I through IV allege wilful and wanton conduct on the part of defendant. The appellate court affirmed the dismissal of these counts, holding that plaintiffs' "utter failure to present any written argument on appeal pertaining to the question of whether these counts contain legally sufficient factual allegations of wilful and wanton misconduct has resulted in the waiver of any error in the circuit court's dismissal of these counts." (162 Ill. App. 3d at 106.) After examining the briefs filed in the appellate court, we reach the same conclusion. Contrary to plaintiffs' position, defendant's motion to dismiss, as well as its brief filed in support of the motion, clearly challenged the legal sufficiency of the wilful and wanton counts. Accordingly, we affirm the appellate court's ruling affirming the circuit court's dismissal of counts I through IV.

### B. Counts V and VII

In count V, a survival action, plaintiffs allege that because of various acts of negligence on the part of defendant, particularly the failure to warn, decedent was unable to see the stopped train until it was too late to avoid the collision. In count VII, a wrongful death

action, plaintiffs make the same allegations, and further allege that defendant was negligent in starting the train after the initial collision in that defendant should have discovered that a collision or some other unusual event had occurred. With the exception of one allegation, subparagraph 6.F of count VII, the appellate court affirmed the dismissal of counts V and VII.

### 1. *Failure to Warn*

We first address the alleged negligence with respect to the initial collision. The parties correctly focus on the issue of a railroad's duty to motorists approaching a standing train at a crossing. Illinois courts have followed the longstanding rule that a train stopped at a crossing is generally held to be adequate notice and warning of its presence to any traveler who is in the exercise of ordinary care for his own safety, and the railroad is under no duty to give additional signs, signals or warnings. See *Petricek v. Elgin, J. & E. Ry. Co.* (1959), 21 Ill. App. 2d 60, 65 (and cases cited therein); see also *Langston v. Chicago & North Western Ry. Co.* (1947), 398 Ill. 248, 255.

The exception to the general rule is that more warnings may be required if "special circumstances" are present. There is no fixed rule as to what constitutes special circumstances. Circumstances which courts have recognized as "special" or "extraordinary" include a blinding snowstorm (*Petricek*, 21 Ill. App. 2d 60) and malfunctioning warning lights which erroneously indicated that the crossing was clear (*Langston*, 398 Ill. 248). In contrast, it has been held that darkness, heavy fog and poor visibility do not constitute special circumstances. *Bachman v. Illinois Central R.R. Co.* (1971), 132 Ill. App. 2d 277.

In discussing the rule and its exception, the court in *Petricek* explained that because of the blinding snow-

storm, plaintiff could not see the standing train. Therefore it did not serve as a warning or notice to him of the train's presence, and the general rule did not apply. (21 Ill. App. 2d at 66.) The court emphasized that perceptibility is an important element in the general rule, and implicitly held that if the train is not perceptible to one exercising ordinary care, the railroad may be liable. Plaintiffs in the case at bar contend that the *Petricek* court's emphasis on perceptibility shows that the Illinois law on this subject has somehow been modified. We disagree. The court in *Petricek*, after reviewing prior Illinois decisions, clearly stated that "one cannot recover for driving his automobile into a train standing across a crossing, except under extraordinary or unusual circumstances." 21 Ill. App. 2d at 66.

Plaintiffs' principal contention is that the traditional common law rule stated in *Petricek* is inconsistent with the doctrine of pure comparative negligence adopted in *Alvis v. Ribar* (1981), 85 Ill. 2d 1. This is so, according to plaintiffs, because under the traditional rule, a plaintiff is barred from any recovery if he was negligent in failing to discover the stopped train, yet under comparative negligence principles, a plaintiff's recovery is only reduced to the extent his negligence caused the injury. It follows, plaintiffs contend, that a railroad has a duty to provide warnings sufficient to alert the negligent motorist of the presence of the stopped train. Plaintiffs also contend that even if the traditional rule applies, they have sufficiently pleaded the existence of special circumstances.

Defendant contends that the doctrine of comparative negligence does not expand or otherwise alter a railroad's duty, and that plaintiffs' complaint fails to allege the existence of special circumstances.

We turn now to an examination of the specific allegations of counts V and VII. Subparagraphs 6.A, 6.B, and

6.C of both counts V and VII allege that the defendant was negligent in the following ways:

"A. Failed to provide automatic flashers or flares or a flagman to warn motorists of the presence of a stopped rail car notwithstanding the fact that the defendant periodically stopped rail cars on said crossing during hours of darkness, the vehicular traffic, the lack of lighting at the crossing, the grades of the crossing and the general condition of the crossing that the crossing was extrahazardous.

B. Periodically stopped rail cars on the crossing during hours of darkness even though the defendant knew or should have known that the conditions of the crossing were such that it was difficult for a motorist to see a rail car parked at the crossing during the hours of darkness an adequate distance back from the crossing to safely stop before striking the parked rail car.

C. Failed to maintain the crossing in such a condition that a motorist's attention would not be unnecessarily diverted and in such a condition that unnecessary distractions were not placed upon a motorist's attention and in such a manner that a motorist would not receive the false illusion that a train was not blocking the crossing with the result that in violation of Ill. Rev. Stat., Ch. 114, Section 62, a motorist could not safely cross during the hours of darkness."

The appellate court ruled that each of these allegations is conclusory. We disagree. Under the principles set forth by this court in *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, and *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, we think the foregoing allegations sufficiently allege ultimate facts, not conclusions. (See also *Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574, 578 (in determining whether a complaint states facts or conclusions, the complaint must be considered as a whole and not in its disconnected parts).) However, we affirm the dismissal of these three subparagraphs on the ground that the com-

plaint fails to state a cause of action for common law negligence with respect to the initial collision.

We will first examine the complaint under the special circumstances doctrine. We address below plaintiffs' contention that the adoption of comparative negligence dictates that we abandon the special circumstances doctrine.

We conclude that plaintiffs have failed to allege the existence of special circumstances which would excuse decedent from discovering the train standing on the crossing. Stripped to its essentials, the three paragraphs at issue allege the following as special circumstances: darkness; the presence of vehicular traffic at the crossing; the absence of lighting at the crossing; the grade of the crossing; and unnecessary distractions in the vicinity of the crossing.

The lack of lighting and the presence of traffic are simply insufficient as a matter of law to constitute special circumstances. Such circumstances are present at numerous crossings throughout the State, and neither statutory authority nor case law requires lighting at every crossing. The fact that the crossing is used by vehicular traffic in no way affects a motorist's ability to see a standing train.

The remaining circumstances alleged relate to the condition of the crossing itself—the grade of the crossing and the "unnecessary distractions." It is clear that these allegations are related to similar allegations in counts VI and VIII, which allege the defendant violated certain rules promulgated by the Illinois Commerce Commission concerning crossings. In counts V and VII, plaintiffs apparently maintain that defendant had a common law duty to construct and maintain the crossing in such a way as to promote visibility of standing trains. We disagree. Whether the source of the duty to maintain the crossing in certain specified ways is statutory or the

common law, we conclude, for the reasons stated below in our discussion of counts VI and VIII, that the violation of those duties in this case has nothing to do with decedent's collision.

In short, the conditions alleged in the complaint do not, either alone or in combination, constitute special circumstances.

The statute cited by plaintiffs in subparagraph 6.C imposes on railroads the duty to construct and maintain crossings "so that at all times they shall be safe as to persons and property." (Ill. Rev. Stat. 1983, ch. 114, par. 62.) The general language of this statute cannot be read as imposing a duty on defendant to provide additional warnings of the presence of a stopped train. As for subparagraph 6.B, plaintiffs contend that the fact that this was a planned, nonemergency stop at the crossing somehow imposes on defendant a greater duty to warn. Plaintiffs cite no authority for this contention, and we reject it.

The remaining allegation in count VII related to the failure to warn is subparagraph 6.F. This is the only allegation in count VII that the appellate court's decision left standing. It alleges that defendant was negligent in that the train crew failed to post a flagman or to ignite flares at the rear of the stopped train. Plaintiffs state in their briefs in this court, although not in the complaint, that this allegation is relevant because decedent initially was traveling parallel to the train tracks. Thus had a flagman or flares been present, he might have been alerted to the presence of the train as he was traveling alongside it.

The appellate court found that plaintiffs did not waive any error in the dismissal of this allegation. The court did not explain the basis for its implicit ruling that the allegation states a cause of action.

We think it debatable whether plaintiff waived error with respect to this allegation. However, we find that

the circuit court correctly dismissed subparagraph 6.F for the reason that the failure to provide warning devices at the *rear* of the train has nothing to do with decedent's collision into the *side* of the train. Whether analyzed in terms of duty or in terms of proximate cause, the result is the same. The evident purpose of such warnings is to alert other trains to the presence of a stopped train, not to alert motorists. Plaintiffs in their brief discuss subparagraph 6.F in a single paragraph, and they cite no authority to support the proposition that a railroad has a duty to provide warnings at the rear of a train for the benefit of motorists approaching the side of a train at a crossing. We decline to impose such a duty. Similarly, the lack of warnings at the rear of a train cannot, as a matter of law, be the proximate cause of a motorist's collision into the side of a stopped train at a crossing. For these reasons, we reverse that portion of the appellate court's ruling which reversed the circuit court's dismissal of subparagraph 6.F of count VII.

Finally, we note that the motion to dismiss was directed to plaintiffs' third amended complaint, and that numerous depositions had already been taken. In these circumstances, further amendment of the complaint likely would have been futile. Thus the circuit court did not err in dismissing with prejudice that portion of the complaint alleging negligence with respect to the failure to warn of the train's presence. See *Village of Lake in the Hills v. Illinois Emcasco Insurance Co.* (1987), 153 Ill. App. 3d 815, 818; *Reardon v. Ford Motor Co.* (1972), 7 Ill. App. 3d 338, 345-46.

For all these reasons, we hold that the complaint fails to allege the existence of special circumstances which would take the case out of the general rule that a stopped train is itself adequate warning to a motorist of the train's presence. Accordingly, the complaint fails to

state a cause of action for common law negligence with respect to the initial collision.

## 2. *Failure to Discover a Collision Had Occurred*

We next address plaintiffs' theory, found at subparagraphs 6.D and 6.E of count VII, that defendant was negligent in starting up the train after the collision. The complaint alleges that decedent was still alive after the collision and potential rescuers were at the scene, and that the train crew in the exercise of ordinary care should have known, prior to starting the train, that a collision or some other unusual event had occurred at the crossing. Specifically, the complaint alleges the train crew was negligent in failing to give an audible warning of the pending movement of the train, failing to exercise an adequate lookout prior to starting the train, and failing to exercise an adequate lookout forward prior to starting the train. The appellate court ruled that plaintiffs waived their contention that the circuit court erred in dismissing subparagraphs 6.D and 6.E of count VII.

As with counts I through IV, defendant in its motion to dismiss clearly addressed the foregoing allegations. Defendant contended that the complaint did not allege a factual basis for imposing a duty to look forward prior to starting the train. Defendant also asserted that the purpose of an interrailroad rule requiring an audible warning signal prior to departure is to provide a warning for the train crew, and that the rule was not intended for the protection of motorists at crossings. We have examined the briefs filed in the appellate court and agree with that court that the plaintiffs' "opening brief contains no argument whatsoever concerning subparagraphs 6.D. and 6.E. of count VII," and that accordingly, plaintiffs waived any error in the circuit court's dismissal of these subparagraphs.

### 3. *Comparative Negligence*

We turn to a consideration of the effect on this case of the doctrine of comparative negligence. The parties, as well as the *amicus curiae*, devoted the major portion of their arguments to this issue. The appellate court was of the opinion that the traditional rule governing this type of case—that a standing train is notice of its presence to a traveler in the exercise of ordinary care, unless special circumstances exist—is inconsistent with the doctrine of pure comparative negligence. (We note that the legislature has adopted a modified form of comparative negligence. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1116.) The provision became effective November 25, 1986.) Accordingly, the appellate court implicitly ruled that the traditional rule is no longer good law. We disagree.

The appellate court supported its view with an example of a motorist speeding along a city street after dark at 50 miles per hour. If the motorist crashes into the side of a stopped train at a crossing, he is precluded from recovery if the train would have been visible to a motorist exercising ordinary care. The court stated: "Yet warning devices better designed to get a motorist's attention—such as flashing lights—could have alerted the speeding motorist to the presence of the train and thus prevented the collision. It follows that in such a case, the lack of additional warning devices may be the proximate cause" of the collision. (162 Ill. App. 3d at 113.) According to the appellate court, a holding that this motorist is barred from recovering because of his lack of ordinary care for his own safety amounts to a holding that he is barred from recovering because he was contributorily negligent.

The appellate court's error is its failure to analyze separately the elements of duty and proximate cause. To be sure, it is sometimes difficult to separate the two con-

cepts (see generally W. Keeton, Prosser and Keeton on the Law of Torts §42, at 272-75 (5th ed. 1984)), but we perceive no such difficulty here. In fact, the appellate court did not address the duty element at all; instead, the court focused on causation. It may be said that additional warnings could have prevented the collision in the appellate court's example. But it is erroneous to conclude, as the appellate court implicitly did, that because additional warnings could have prevented the collision, the railroad had a duty to provide additional warnings. The analysis is flawed because unless a duty is owed, there is no negligence. And the existence of a duty is a question of law for the court to determine. *Curtis v. County of Cook* (1983), 98 Ill. 2d 158, 163.

We agree with defendant that under the appellate court's reasoning, it follows that: (1) a defendant's duty is conditioned on the plaintiff's conduct; and (2) a railroad has a duty to anticipate and guard against the negligence of others. Neither of these propositions is supportable. We hold today that the adoption of comparative negligence does not expand or otherwise alter the duty owed by a railroad to motorists approaching a standing train at a crossing.

This court has not had occasion to squarely address the issue presented. In *Clarkson v. Wright* (1985), 108 Ill. 2d 129, 133-34, we held that evidence of failure to wear a seat belt is inadmissible with respect to either the question of liability or the question of damages. We analyzed the issue in terms of a plaintiff's duty. We observed that there was no statutory duty to wear a seat belt and that the presence of the seat belt in the automobile did not create a duty to wear it. In addition, we found "no authority which imposed on plaintiff the duty to anticipate and guard against defendant's negligence." (108 Ill. 2d at 133.) Clearly, the same principle applies to a defendant's duty. Contrary to the appellate court's

view, defendant had no duty in this case to anticipate and guard against decedent's negligence.

The decisions of our appellate court since the adoption of comparative negligence, while not addressing the issue directly, have assumed that comparative negligence principles neither changed the traditional rules defining a defendant's duty, nor relieved a plaintiff of the duty to exercise ordinary care. *Frankenthal v. Grand Trunk Western R.R. Co.* (1983), 120 Ill. App. 3d 409, 415 (defendant railroad's engineer "had the right to assume that motorists approaching the tracks would exercise due care for their own safety"); *Carroll v. Commonwealth Edison Co.* (1986), 147 Ill. App. 3d 909 (no duty on defendant landowner to warn plaintiff invitee of an open and obvious condition); *Lohan v. Walgreens Co.* (1986), 140 Ill. App. 3d 171 (no duty on defendant landowner to warn plaintiff invitee of natural accumulations of ice, snow or water).

Other jurisdictions have expressly held that the advent of comparative negligence did not change the duty owed by a defendant. *Thompson v. Stearns Chemical Corp.* (Iowa 1984), 345 N.W.2d 131, 134; *Britt v. Allen County Community Junior College* (1982), 230 Kan. 502, 505, 638 P.2d 914, 917, *overruled in part on other grounds, Bowers v. Ottenad* (1986), 240 Kan. 208, 729 P.2d 1103.

Although not expressed in the foregoing decisions, our rejection of an expansion of a railroad's duty rests primarily on policy grounds. The law imposes a duty on all persons to exercise ordinary care. We believe that the imposition of a general duty to anticipate and guard against the negligence of others would place an intolerable burden on society. In the situation presented by the case at bar, a railroad would never know, until after an accident had occurred, whether the measures it had taken to warn motorists were sufficient to discharge its

duty. We decline to adopt a rule which would place such a burden on railroads.

In sum, we are persuaded that the adoption of comparative negligence principles did not alter the duty owed by a railroad to motorists approaching a standing train, and we reject the appellate court's view to the contrary.

## C. Counts VI and VIII

Counts VI and VIII allege that defendant negligently violated various rules promulgated by the Illinois Commerce Commission (ICC) and that these violations proximately caused the decedent's death. The appellate court reversed the circuit court's dismissal of counts VI and VIII, holding that whether violations existed and, if so, whether the violations proximately caused decedent's injuries and death are questions of fact for the jury to determine. (162 Ill. App. 3d at 117.) Justice Green dissented from this portion of the appellate court's opinion, concluding that "[l]ogic defies any conclusion that any of the safety rules alleged were enacted with any thought of avoiding collision of motor vehicles with stopped trains or that any violation of these rules could be a proximate cause of any such collision." (162 Ill. App. 3d at 119.) We agree with the reasoning of Justice Green's dissent and hold that counts VI and VIII fail to state a cause of action.

In order to recover for a defendant's violation of a statute or rule designed to protect human life or property, a plaintiff must show: (1) the violation proximately caused the injury; (2) plaintiff belonged to the class of persons whom the rule was intended to protect from injury; and (3) the kind of injury suffered by plaintiff was the kind of injury which the rule sought to prevent. *Barthel v. Illinois Central Gulf R.R. Co.* (1978), 74 Ill. 2d 213, 219-20.

The ICC rules which the complaint alleges were violated are Rule 4 of General Order 106, and Rules 204, 205, 206 and 207 (92 Ill. Adm. Code §§1535.204, 1535.205, 1535.206, 1535.207 (1985)). The appellate court found that Rule 4 of General Order 106 was not in force at the time of decedent's death, having been superseded in 1973 by the provisions of the Illinois Administrative Code relating to grade crossing safety. (92 Ill. Adm. Code §1535.10, at 13,754 (1985).) Instead, the appellate court implicitly found that ICC Rule 203 applies. Plaintiffs state that Rule 4 is applicable because that rule continues to apply to crossings constructed during the time period in which the Smith Street crossing was constructed. However, for our purposes it is immaterial whether Rule 203 or Rule 4 is the applicable rule, since both address the same subject matter; the rules differ only as to certain technical requirements.

All of the cited rules address the condition of railroad crossings or their approaches. With the exception of Rule 4, the appellate court opinion sets out the text of each of the cited rules. Thus we will only briefly summarize the rules' provisions.

Rule 4 prescribes requirements for the construction of crossings and provides, among other things, that the materials with which the crossings are constructed shall be flush and level with the top of the rails, between the rails of each track and between tracks, and for distances of at least 16 inches beyond the outside rails. It also prescribes the width of crossings. Rule 203 contains similar provisions. Rule 204 requires that an ascending or descending grade at a crossing shall not be greater than 1% in the first 25 feet from the track, or greater than 5% thereafter, to the edge of the right-of-way.

Rule 205 provides that the railroad shall keep its right-of-way adjacent to its tracks reasonably clear of brush, shrubbery and other obstructions for a certain

distance from the crossing "where such things would materially obscure the view of *approaching* trains to travelers on the highway." (Emphasis added.) Rule 206 provides that the railroad shall "construct and maintain the crossing and approaches extending 24 inches outward from the outer rail of each track so that at all times they will be reasonably safe as to persons and property." Rule 207 provides that where tracks are raised through a highway grade crossing, the highway approaches must conform as nearly as practicable with the grades specified in Rules 203 and 204.

Plaintiffs implicitly recognize, as they must, that the foregoing rules pertain either to the condition of the crossing itself, which decedent never reached, or to a motorist's lateral view, not his view of what lies directly in front of him. Nonetheless, plaintiffs argue that violation of the rules could have been a proximate cause for the following reasons. (1) To the extent decedent, while attempting to look for approaching trains, was distracted by weeds and shrubbery, or by the rough crossing, he was precluded from seeing the stopped train in front of him. (2) Weeds obscured the wheels of the railroad car, which decedent might otherwise have seen since the motorcycle's headlight would have illuminated the wheels, the lowest part of the railroad car. (3) The crossing was steeper than is allowed by the rules. This condition created the false illusion that the crossing was clear because a motorcycle's headlight would not shine *on* the railroad car but *below* it, and because a motorist could see streetlights under the railroad car.

Defendant contends that counts VI and VIII fail to state a cause of action because the alleged violations could not have proximately caused the accident and because the rules were not intended to prevent collisions between motorists and trains stopped at crossings. See *Fox v. Illinois Central R.R. Co.* (1941), 308 Ill. App. 367, 374 (alleged vi-

olation of statute providing that stopped train may remain on tracks for no longer than 10 minutes failed to state cause of action; purpose of statute is to prevent traffic delays, not to prevent collisions between motorists and standing railcars); see also *Havens v. Harris Township* (1988), 175 Ill. App. 3d 768, 771 (in case involving collision between truck and minibike on rural road, failure of defendant township to mow vegetation along roadway held irrelevant, since purpose of statute relied on by plaintiff is to prevent spread of noxious weeds harmful to public health, not to promote visibility on roadway (Ill. Rev. Stat. 1985, ch. 121, par. 9—111)).

The appellate court correctly noted that the purpose of Rules 203, 204, and 206 "is to insure that railroad crossings are safe for purposes of public passage and particularly that they are smooth." (162 Ill. App. 3d at 117.) Yet the court then stated that "[i]t cannot be said that protecting the public from being distracted by rough surfaces of crossings and not thereby observing trains at crossings, or protecting the public from obtaining a false illusion that a train is not present at a crossing due to an unusually steep grade at the crossing, are not among the purposes of these rules." (162 Ill. App. 3d at 117.) To the contrary, we think it clear that these were *not* among the purposes of Rules 203, 204 and 206. As for Rule 205, it specifically refers to objects obstructing the view of approaching trains; thus it plainly was not intended to promote visibility of stopped trains.

We concur in the reasoning of Justice Green, whose dissent we quote at some length:

"Requirements as to the level of tracks in relation to the level of the roadway at a crossing or requirements as to the slope of the approaches to a crossing are logically enacted to make the crossing easier upon the vehicle, to prevent the vehicle from becoming [stuck] on the tracks, to enable the driver of the vehicle to cross the tracks

more quickly and, in the case of the grade of the approach, to give the driver a better view up and down the tracks before crossing. No indication has been given that the purpose of either of the regulations was to prevent an approaching driver from failing to see an encroaching railroad car because the driver might see light by looking under the car and assume that the crossing was free. Actually, a steeper grade at the crossing would cause the driver to slow down and would aid in the stopping of the vehicle prior to contact with the railroad car.

Similarly, requirements as to the width of the crossing or as to the necessity of having a desirable lateral view at the crossing could not have been enacted to deter a collision between an approaching vehicle and a railroad car blocking the crossing. Either a narrow crossing or one with a bad view would tend to slow the driver of the approaching vehicle and tend to make a collision less likely. It is inconceivable that a driver would come up to a crossing on a dark night and, because of an impaired lateral view, fail to slow down and fail to see a vehicle directly ahead." 162 Ill. App. 3d at 119 (Green, J., concurring in part and dissenting in part).

We find particularly significant the observation that the violation of certain rules could actually *prevent* the type of collision that occurred. In addition to the examples given by Justice Green, Rule 204 permits tracks to be either elevated above or depressed below the surface of the roadway. If the crossing had been depressed to a greater extent than the rule permits, visibility of a stopped train could actually be improved. It follows that improved visibility of a stopped train was not the purpose of Rule 204.

For these reasons, we hold that counts VI and VIII, alleging violations of various ICC rules, fail to state a cause of action. Accordingly, we reverse that part of the appellate court judgment which reversed the circuit court's dismissal of counts VI and VIII.

Two matters remain for consideration. First, while the case was pending before this court, defendant filed a motion to strike the statement of facts portion of plaintiffs' opening brief on the ground that it contains allegations of fact not alleged in the complaint. We ordered the motion taken with the case. We find it unnecessary to describe in detail the procedural disputes between the parties related to the pending motion to strike. We note that the motion to strike would not have been necessary had defendant, at the circuit court level, heeded this court's admonition against "hybrid" motions—motions that combine aspects of both a motion to dismiss and a motion for summary judgment. *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 405-06.

It is axiomatic that only well-pleaded facts alleged in the complaint, and any attached exhibits, may be considered on a motion to dismiss. We have carefully reviewed the record and are convinced that, in ruling on the motion to dismiss the third amended complaint, the circuit court did not rely on the matters outside the complaint erroneously submitted by both parties. The record also convinces us that plaintiffs were not prejudiced by defendant's use of a hybrid motion, since the motion clearly put plaintiffs on notice that defendant challenged the legal sufficiency of the complaint. Accordingly, defendant's motion to strike is granted. In any event, we note that, had the factual allegations found in plaintiffs' statement of facts been incorporated into the complaint, our disposition of the case would not change. The addition of those factual allegations would not cure the infirmities we have identified.

Second, plaintiffs urge this court to abandon fact pleading and adopt notice pleading in its place. Plaintiffs did not raise this issue in the appellate court, and cannot do so now. Even in the absence of waiver, we would find it unnecessary to address the issue, since we have ruled

that the appellate court erred in finding that certain allegations did not meet the requirements of fact pleading.

## IV. CONCLUSION

Plaintiffs have waived any error in the dismissal of counts I through IV, the wilful and wanton counts. They have also waived any error in the dismissal of their claim, alleged in subparagraphs 6.D and 6.E of count VII, that defendant was negligent in failing to discover a collision had occurred prior to starting the train. Count V fails to state a cause of action for negligence with respect to the initial collision. Similarly, count VII, specifically, subparagraphs 6.A, 6.B, 6.C and 6.F, fails to state a cause of action for negligence with respect to the collision. Counts VI and VIII fail to state a cause of action for negligent violation of ICC rules. In short, the circuit court did not err in dismissing plaintiffs' third amended complaint with prejudice.

For the foregoing reasons, the judgment of the appellate court is affirmed in part and reversed in part. The judgment is affirmed to the extent the appellate court upheld the dismissal of plaintiffs' third amended complaint, and reversed to the extent the court reversed the dismissal. The judgment of the circuit court, dismissing plaintiffs' third amended complaint with prejudice, is accordingly affirmed.

*Appellate court affirmed in part and reversed in part; circuit court affirmed.*

WARD AND CALVO, JJ., took no part in the consideration or decision of this case.