**Wilfred G. NOBLES, Jr. and Valerie Nobles, Plaintiffs–Appellees,**

v.

**WHITE COUNTY, ILLINOIS, Defendant–Appellant,**

v.

**MOTORISTS MUTUAL INSURANCE CO., Defendant–Appellee.**

No. 91–3394.

United States Court of Appeals, Seventh Circuit.

Argued April 27, 1992.

Decided Aug. 24, 1992.

Rehearing Denied Sept. 22, 1992.

---

Mark E. Ferguson, Evansville, Ind., Matt Parmenter, argued, Vincennes, Ind., for Wilfred G. Nobles and Valerie Nobles.

Jay S. Judge, argued, Kathryn M. James, Judge & James, Park Ridge, Ill., for White County, Illinois.

Jerome E. McDonald, argued, Campbell, Black, Carnine & Hedin, Mt. Vernon, Ill., for Motorists Mut. Ins. Co.

Before CUMMINGS, EASTERBROOK and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff Wilfred Nobles was driving southbound on Epworth Road in White County, Illinois, at approximately 40 miles per hour. His friend Daniel McCarty, the owner of the car, was riding as a passenger. Darrance Ackerman was driving westbound on Maunie Road at no more than 40 miles per hour.[1] The cars collided at the intersection of the two roads. The intersection had no stop signs for southbound or westbound traffic. However, stop signs were posted for northbound and eastbound traffic. This stop-sign configuration was designed to accommodate the principal flow of traffic. The Illinois Manual on Uniform Traffic Control devices for Streets and Highways makes no reference to this type of sign configuration. However, plaintiff presented some expert testimony that this type of sign configuration is confusing and hazardous to drivers. At least one substantially similar accident at the same intersection had previously resulted in litigation against White County.

Both Nobles and Ackerman had traveled through this intersection on many other occasions. No speed limit was posted for either road, which limit at that time was 55 miles per hour. At the northeast corner of the intersection there was a two-foot tall dirt embankment. Crops grew at the northeast portion of the intersection, the height of which was disputed. A local farmer estimated that the crops were 1 foot to 1 and ½ feet high at the time of the accident. Plaintiffs' expert testified that two-foot tall crops growing on top of the embankment would have obstructed a driver's sight. The officer at the scene of the accident noted that the embankment was a "possible" obstruction. Plaintiff, who had been driving a Volkswagen, claimed that he could not see Ackerman approaching in a Chevrolet pick-up truck. Plaintiff's passenger testified that his view was unobstructed.

*Procedural History*

Plaintiffs Wilfred and Valerie Nobles, husband and wife, brought this action as a result of this two-car collision at the intersection of Epworth and Maunie Roads in White County, Illinois. Plaintiffs sought recovery for bodily injury, as well as loss of services, society and consortium. Plaintiffs' two-count amended complaint alleged negligence on the part of White County and the other motorist involved in the collision, Darrance H. Ackerman. The first count of the complaint alleged that the county failed to install needed stop signs, negligently placed stop signs, failed to warn of a hazardous condition, and failed to maintain its highways in a reasonably safe condition. The second count sought benefits of underinsured motorist coverage from Motorists Mutual Insurance Company as a result of the negligent acts of Darrance Ackerman.

White County moved to dismiss Count I on the basis that it was immune from liability for any failure to post traffic-control devices under Ill.Rev.Stat., ch. 85, ¶ 3–104(a) (1985). The motion was granted with respect to any alleged failure to erect stop signs, but denied with respect to allegations of negligent placement of stop signs, failure to warn, and negligent maintenance. White County later moved for summary judgment as to the remainder of the negligence actions against it, but that motion was denied.

The trial in this case began on October 2, 1990, and ended on October 31, 1990, when the jury returned its verdict for plaintiffs in the amount of $109,086.50. The jury apportioned negligence as follows: White County 80%, Darrance Ackerman 10%,

---

1. Ackerman's rate of speed is disputed. Ackerman claims that he was traveling at 10–15 miles per hour, but Nobles and his passenger claim that Ackerman was traveling at 35–40 miles per hour.

Wilfred Nobles 10%. The court entered judgment in accordance with the verdict on November 2, 1990. White County unsuccessfully moved for judgment notwithstanding the verdict, new trial, and remittitur. The County then appealed. Since no final judgment disposing of the cross-claim filed by Motorists Mutual Insurance Company ("Motorists Mutual") had been entered, the appeal was dismissed for lack of jurisdiction. Thereafter, the district court entered a second amended judgment in favor of the Nobles and Motorists Mutual and against White County. White County now appeals the judgment of the district court.

*Analysis*

On appeal, White County argues that: 1) it either had no duty to install, or was immune from liability for failing to install, a stop sign for southbound or westbound traffic and warning signs of a hazardous condition, and 2) that one or both of the drivers, not White County, was the proximate cause of the accident as a matter of law. Because this case invokes diversity jurisdiction, we address the merits of each argument under Illinois law.

*Governmental Immunity*

The plaintiffs sought recovery from defendant White County on two distinct theories—a) that the County was negligent both in its placement of stop signs in an unusual and unexpected manner and in its failure to warn thereof, and b) that the County was negligent in failing to warn motorists of the sight obstruction at the intersection. Motorists Mutual based its cross-claim on this second theory. It particularly emphasized that the County's failure to warn motorists of that obstruction endangered the safe movement of traffic. White County claims immunity from liability under both theories on the basis of the Local Governmental and Governmental Employees Tort Immunity Act, Ill.Rev. Stat., ch. 85, ¶ 3–104 (1985). That Section provides:

> (a) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to *initially* provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating sign.
>
> (b) Neither a local public entity nor a public employee is liable under this Act for an injury caused by failure to provide traffic warning signals, signs, markings or other devices, *unless such a signal, sign, marking or device was necessary to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care. Id.* (emphasis supplied).

The Illinois Supreme Court recently explained Section 3–104(a) and Section 3–104(b) in *West v. Kirkham*, 147 Ill.2d 1, 167 Ill.Dec. 974, 588 N.E.2d 1104 (1992). In *West*, the court held that liability could not be imposed on a City for its failure to provide a left turn arrow for southbound traffic even though it had provided such an arrow for northbound traffic. The *West* plaintiff had argued that while the city had no duty to "initially provide regulatory traffic control devices," once the city provides a signal at a given intersection, the City may then have a duty to provide others. The *West* court rejected plaintiff's Section 3–104(a) argument on the basis that such an exception would effectively "swallow the section's immunity entirely." *Id.* 167 Ill.Dec. at 978, 588 N.E.2d at 1108.

In this case, the Nobles make much the same argument as the *West* plaintiffs. The Nobles contend that even though White County had no duty to erect any stop signs initially, once it erected stop signs for northbound and eastbound traffic, it had a duty to do so for either southbound or westbound traffic as well. However, under the reasoning of the Illinois Supreme Court, this argument must fail. Indeed, to the extent that a prior Illinois Appellate Court case had relied on Section 3–104(a) in reaching its conclusion, the *West* court overruled that case which would have supported plaintiffs. The case, *Smith v. County of White*, 191 Ill.App.3d 569, 138 Ill.Dec. 789, 548 N.E.2d 19 (5th Dist.1989),

arose from the exact same intersection at issue here.

But while *West* overturned *Smith* with respect to the Section 3–104(a) issue, it did not upset *Smith's* holding under Section 3–104(b). Instead, the *West* court distinguished the case before it from *Smith* on the basis that "the collision in *Smith* occurred prior to the 1986 amendment of section 3–104." 167 Ill.Dec. at 978, 588 N.E.2d at 1108. In 1986, the Illinois legislature amended Section 3–104(b) by eliminating that portion of the statute which had permitted a local entity to be held liable for injuries caused by a failure to provide a signal that "was necessary to warn of a condition which endangered the safe movement of traffic * * *." In reviewing the history of the statute, the *West* court noted that *before* 1986, under Section 3–104(b), "it was possible to hold a municipality liable for the failure to provide a traffic warning device if such was 'necessary to warn of a condition which endangered the safe movement of traffic.'" *Id.* 167 Ill.Dec. at 977, 588 N.E.2d at 1107.

■■■ Wilfred Nobles' accident occurred on October 24, 1986, one month before Section 3–104(b) was amended. As a general rule, Illinois courts consider statutory amendments to apply prospectively absent express language to the contrary. *People v. Fiorini,* 143 Ill.2d 318, 158 Ill.Dec. 499, 574 N.E.2d 612, 617 (1991). Such seems likely in the case of this amendment. See *Cooper v. Chicago Transportation Authority,* 224 Ill.App.3d 321, 166 Ill.Dec. 617, 586 N.E.2d 575 (1st Dist.1991). But even if this were not so, the defendant has waived any argument that the 1986 amendment applies retroactively. Therefore the pre–1986 Section 3–104(b) applies to this case. Thus to the extent that the jury verdict can be predicated on Section 3–104(b) rather than Section 3–104(a) it can be maintained. The jury rendered a general verdict for the Nobles and attributed 80% of the liability to White County, 10% to Ackerman and 10% to the Nobles. The Court asked whether either counsel wanted the jury polled, but neither did (Tr. Rec. 497). Under Illinois law an appellate court may sustain a jury's general verdict as long as there is at least one good cause of action to support it. *Bandura v. Orkin Exterminating Co.,* 865 F.2d 816, 821 (7th Cir. 1988); *Witherell v. Weimer,* 118 Ill.2d 321, 113 Ill.Dec. 259, 263, 515 N.E.2d 68, 72 (1987); *Litchfield v. Thorworth,* 337 Ill. 469, 169 N.E. 265, 268 (1929).

In this case the Section 3–104(b) theory was argued below. Plaintiffs presented expert testimony of a highway traffic engineer regarding the sight restriction at the intersection. A traffic engineer called on behalf of the County testified that a two-foot embankment combined with two-foot tall crops would constitute a sight restriction and that a three and one-half foot obstruction would be getting close to the limit. A local farmer estimated the height of the crops at the time of the accident to have been approximately one to one and one-half feet and acknowledged that the crops can grow to be three feet tall. The police officer at the scene of the accident testified that an embankment existed. Each driver testified that he had not seen the other approaching. The jury was instructed that as a part of plaintiffs' negligence claim, plaintiffs alleged that "Defendant, White County, Illinois, failed to warn drivers approaching the intersection from the north or east that a sight restriction existed" (Tr. Rec. 483).

■■■ On the basis of the foregoing evidence, the jury could have found that there was a sight restriction at the intersection which required the County to erect warning signs. Under the pre–1986 Section 3–104(b), a local governmental entity such as White County had "an obligation to maintain public highways within its boundaries in a safe condition." *Janssen v. Springfield,* 79 Ill.2d 435, 38 Ill.Dec. 789, 796, 404 N.E.2d 213, 220 (1980) (noting that this obligation was codified by Section 3–102, Ill.Rev.Stat., ch. 85, ¶ 3–102 (1973)). That obligation included a duty "to warn motorists of dangerous conditions." *Id.* Before the 1986 statutory amendment, the County was not immune from that obligation. Therefore a jury determination that White County negligently failed to warn motor-

ists of the visual obstruction at the intersection, a "condition which endangered the safe movement of traffic and which would not be reasonably apparent to or anticipated by a person in the exercise of due care," may stand. The possibility that a stop sign might have been the best type of warning sign to use in order to alert motorists to the hazardous condition does not reclassify the case as other than a Section 3–104(b) case. *Janssen,* 38 Ill.Dec. at 798, 404 N.E.2d at 222 ("We do not believe * * * that the denomination of a sign as a regulatory or warning sign in the State manual determines whether a particular sign is 'necessary to warn of a condition which endangered the safe movement of traffic' ").

*Proximate Cause*

White County also argues that its failure to warn the drivers of the sight restriction at the intersection was not the proximate cause of the accident because 1) Ackerman testified that he had stopped and looked both ways even though there was no stop sign present for westbound traffic, 2) one of the two drivers had an obligation to yield to the other, and 3) the motorists were familiar with the intersection.

 However, none of these arguments is persuasive. First, this Court cannot make a legal conclusion based on Ackerman's testimony because that testimony was controverted and therefore any judgment as to its credibility was appropriately left to jury as the finder of facts. Second, the County's argument for judgment as a matter of law on the basis that one of the two drivers violated the Illinois Right-of-Way statute by failing to yield is likewise unpersuasive. Under Illinois law there can be more than one proximate cause of an injury. *Sears v. Kois Brothers Equipment Inc.,* 110 Ill.App.3d 884, 66 Ill.Dec. 531, 443 N.E.2d 214 (1st Dist.1982). It is the jurors' duty to apportion negligence between the parties. The cases cited by defendant such as *Novander v. Morris,* 181 Ill.App.3d 1076, 130 Ill.Dec. 817, 537 N.E.2d 1146 (1st Dist.1989), which carve out an exception to the general rule of jury resolution of proximate causation questions, are not to the contrary. *Id.* at 1078, 130 Ill.Dec. 817, 537 N.E.2d 1146. *Novander* permits judgment as a matter of law only where the condition by which the injury is made possible is followed by an intervening or unforeseeable act of negligence which breaks the chain of causation. In this case reasonable persons may conclude that the motorists' failure to yield was a natural and probable result of the County's failure to warn them that their ability to sight other vehicles would be obstructed. Therefore, the question was properly left to the jury. Finally, we reject the County's argument that the drivers' familiarity with the intersection absolved it of a duty to warn them of hazardous conditions. A plaintiff's unreasonable conduct in encountering a known risk may constitute contributory negligence, but it does not obviate the defendant's duty to warn of a hazardous condition. See *Dunn v. Baltimore & Ohio Railroad Co.,* 127 Ill.2d 350, 130 Ill. Dec. 409, 415–16, 537 N.E.2d 738, 744–745 (1989) (holding that the issues of duty and proximate cause are analyzed separately).

At trial the jury heard testimony regarding all of the arguments now raised by the County. The jury was also instructed on the issue of proximate causation. It found White County responsible for 80% of the negligence involved in the accident. That decision was within the jury's domain and its verdict will not be disturbed.

Therefore, the district court's judgment for the Nobles and for Motorists Mutual is affirmed.