NO. 4-96-0599

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE ILLINOIS STATE BOARD OF ELECTIONS, ) Administrative

Petitioner, ) Review of the 

v. ) Human Rights

THE ILLINOIS HUMAN RIGHTS COMMISSION ) Commission

and CELIA DART, ) No. 1989SF0094

Respondents. ) 

JUSTICE GREEN delivered the opinion of the court:

On September 1, 1988, respondent, Celia Dart, an employee of petitioner, the Illinois State Board of Elections (Board), filed a complaint with respondent, the Illinois Human Rights Commission (Commission), contending she was discriminated against by the Board because she, a female, received less pay than Mark Kloever, a male, for doing similar work.  She claimed a violation of section 2-102(A) of the Illinois Human Rights Act (Act) (Ill. Rev. Stat. 1987, ch. 68, par. 2-102(A)), which states as follows:

"It is a civil rights violation:

(A) 
Employers.  For any em­ployer to refuse to hire, to segre­gate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or 
terms
, privileges 
or
 conditions of employment on the basis of unlawful discrimination
."  (Emphasis added.)

Section 1-103(Q) of the Act describes "[u]nlawful discrimination" as:

"[D]iscrimination against a person because of his or her race, color, religion, national origin, ancestry, age, 
sex
, marital status, handicap or unfavorable discharge from mili­tary service as those terms are defined in this Section."  (Emphasis added.)  Ill. Rev. Stat. 1987, ch. 68, par. 1-103(Q).

After hearing evidence, the Commission issued an order on June 26, 1996, finding the Board violated the Act by discrimi­nating against Dart in regard to her salary because of her sex and awarded her (1) $25,257.42 in back pay, (2) $1,916.89 to be paid to the Social Security Administration as due from the additional salary, (3) $2,511.38 to be similarly paid to the Illinois State Employees Retirement System, and (4) $17,132.50 for attorney fees and $287.63 for court costs.  The Board has taken administrative review to this court.  775 ILCS 5/8-111(A)(1) (West Supp. 1995).

The parties dispute the allocation of the burden of proof, but we conclude the Commission found that, even under the alloca­tion we and the Board deem to be correct, Dart is entitled to the relief granted.  The decision of the Commission was not contrary to the manifest weight of the evidence regardless of what alloca­tion was re­quired.  We do not find any reversible error in the introduc­tion of evidence.  We disagree with the Commission in regard to its appraisal of the importance of the college degree of Board employee Kloever, to whom Dart compared herself, but also find no reversible error in that regard.  Accordingly, we affirm.

We must first determine what issues are before us.  In the Board's brief it listed three matters as being issues.  The first was whether the Commission's determination that Dart and Board employee Kloever performed equal work was contrary to the manifest weight of the evidence.  The second such issue was whether the Commission's determination that the Board's stated reason for giving Kloever a higher salary than Dart was not worthy of belief was contrary to the manifest weight of the evidence.  The last stated issue was whether the Commission erred relative to the equality of work between Dart and Kloever and the Board's nondiscriminatory reasons for paying Kloever a higher salary than Dart.

In the Commission's brief, it contended the Board raised an issue as to whether the Commission applied the proper formula for the burden of proof.  The Board had not referred to this issue in its statement of issues or its points and authori­ties.  However, in a summary of its argument, the Board stated that if the complainant establishes that "she is a member of a protected class, based on gender, that she performs substantially equal work to a compar­ator not of the same gender class, and that she is paid at a rate less than the comparator," she has estab­lished a 
prima
 
facie
 case and the burden shifts to the respondent to articulate a proper reason for the wage differential.  

The summary then stated that if the respondent articu­lates "one or more defenses the burden of production again shifts back to the complainant to prove that the reasons offered by the respon­dent are pretextual," and Dart failed to make this proof.  Later, in the Board's detailed argument portion of its brief, the Board stated the Commission "appears to have ignored the require­ment that the complainant prove by a preponderance of the evi­dence that the non-discriminatory reason articulated by the respondent for the difference in salary was a mere pretext."  The argument then stated the Commission appears to have required the Board to "bear the burden of proof that its hiring decision was non-discriminatory."  The Board then raised this issue in more detail in its reply brief.  Dart maintains that because the question of the allocation of burden of proof was not raised in the Board's statement of issues, it is not properly before us.

Because of the importance of the allocation of burden of proof, we examine the question of whether it was properly raised in detail.  Supreme Court Rule 335(i)(1) states, in part,  that "[i]nsofar as appropriate, the provisions of [Supreme Court] Rules 301 through 373 (except for Rule 326) are applicable" for proceedings in the appellate court for administrative review.  155 Ill. 2d R. 335(i)(1).  Supreme Court Rule 341(e) concerns appellant's briefs and subsection 7 therein states, in part:  "[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."  155 Ill. 2d R. 341(e)(7); see 
Dunn v. Baltimore & Ohio R.R. Co.
, 162 Ill. App. 3d 97, 105, 515 N.E.2d 1027, 1033 (1987); 
Gale v. Hoekstra
, 59 Ill. App. 3d 400, 410, 375 N.E.2d 456, 464 (1978).

In 
People v. Saulsburry
, 178 Ill. App. 3d 857, 864, 533 N.E.2d 1154, 1158 (1989), the Second District Appellate Court stated:

"Finally, defendant 'notes' in a curso­ry, one-page argument in his brief that the prosecutor made improper comments in his closing arguments.  Contrary to Supreme Court Rule 341(e) (113 Ill. 2d R. 341(e)), the issue was not listed in the statement of issues pre­sented portion of the brief or mentioned in the caption of the issues in the argument portion of the brief, and is there­fore waived.  Further, the issue is also waived for failure to raise the issue in the written post-trial motion.  
People v. Enoch
 (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124[, 1129-30]."

The foregoing is the only authority we have found to deem an issue before this court waived when, as here, it is not set forth in the statement of issues or captioned in regard to the argu­ment.  In other cases, such as 
Dunn
 (162 Ill. App. 3d at 105, 515 N.E.2d at 1033) and 
Gale
 (59 Ill. App. 3d at 410, 375 N.E.2d at 464), the court speaks of waiver occurring when the issue is not raised in any portion of the appellate brief.  We conclude the latter is the rule.  Stating the points to be relied upon for reversal in the statement of issues in the brief is highly desirable and makes the argument of the brief more logical and persuasive, but we deem the Board's brief here barely sufficient to raise the issue of the allocation of burden of proof.

The particulars of Dart's complaint before the Commis­sion were as follows:  (1) Dart was hired in December 1973; (2) since December 1984 and continuing, Dart had not received pay equal to Kloever for the performance of her duties as an "Elec­tion Spe­cial­ist II"; (3) Dart's supervisor was a female and her divi­sion included five election specialists--three female and two male; (4) Mark Kloever (a male) and Dart were "Election Special­ist IIs" (at the time the com­plaint was filed) and performed the same duties; (5) Kloever was hired as a trainee in 1984 with a begin­ning salary of $19,000; (6) Kloever had been with the Board for four years and Dart had been with the agency for eight years; (7) Kloever made $4,000 to $5,000 per year more than Dart; and (8) Dart's employer did not give her special assignments, which would have helped in her evaluations.

The evidence was heard before an administrative law judge (ALJ).  Dart testified (1) she completed high school in 1947 and took a six-month course at Universal Career College; (2) she took a refresher business course in 1971; (3) her work experience included a bookkeeping job for 1½ years, 3 years with the Illi­nois Department of Public Aid calculat­ing vouchers, part-time for 3 years with the Internal Revenue Service as a cashier, and working for various political cam­paigns; (4) her campaign experi­ence was primarily as manager for her husband's campaign when he ran for commissioner of the City of Springfield in 1963; (5) she also worked on other local campaigns but was not involved in the finances of those cam­paigns; (6) her next employ­ment was with the Board; and (7) she has worked continuously for the Board since December 1973.

Dart further testified she was promoted to the posi­tions of "Election Specialist I" (Specialist I) in 1981, "Elec­tion Specialist II" (Specialist II) in 1985, and "Election Specialist III" (Specialist III) in 1989 after she filed her complaint.  Dart said Kloever was originally hired in 1984 as an "Election Specialist-Trainee" (Specialist-Trainee), and he later became a Specialist I, II, and III.  Dart testified she and Kloever were promoted to Specialist II at about the same time and she became a Specialist III a few months prior to Kloever.  From her observation, it appeared she and Kloever performed the same duties.  Dart testified that at the time of the hearing her primary duty was to insure the political committees assigned to her complied with the campaign disclosure provisions of the Election Code (Code) (10 ILCS 5/9-1 
et
 
seq
. (West 1994)).  She said she did this by reviewing the submitted reports of the 200 committees for which she was responsible.

Dart introduced a number of exhibits in support of her case, including the job "specifications" for the various jobs she and Kloever have held.  These exhibits indicated the duties of an election specialist include, 
inter
 
alia
, analysis and review of legislative rules and regulations related to elections, research, investigation of complaints, review of nominating petitions, and assisting candidates and committees in complying with the Code
.  According to these exhibits, the educational requirements for performing the duties of Specialist-Trainee and Specialist I, II, and III include "knowledge, skill, and mental development equiva­lent to completion of four years['] college with courses in public administration, government or communications."

Joe McFadden, testifying for the Board, stated he was director of support services for the Board and had been for 16 years.  He stated Kloever was initially hired in 1984 as a Specialist-Trainee at a salary of $1,622 per month.  At that time, Dart was a Specialist I and had held that position for three years with a salary of $1,443.  McFadden agreed the duties and percentage of time devoted to each of those duties for a person holding the position of Specialist III would be "very similar."  He stated, however, that two people with the title of Specialist III could have "considerably different" duties and work assignments.

McFadden also testified that the decision as to whether to hire Kloever and what his salary would be was made by Barbara Mason and Ronald Michaelson.  McFadden said he calculated Kloever's salary would be 10.2% over his previous salary and anything over 10% required approval from Central Management Services, a state agency.  According to McFadden, two males and five females had been recommended for hire as "Election Special­ists" at a rate of pay above 10% of their previous salary.

Michaelson, Executive Director for the Board, testified he has worked for the Board since 1974.  He stated Dart was hired in 1973 as an "Election Technician II," which was a "clerical kind of position."  Michaelson indicated Kloever was hired in 1984.  Most of Michaelson's testimony consisted of an offer of proof that was rejected, and no contention is raised on review that the rejection was error.

Mason, director of campaign disclosure for the Board, testified she was the general supervisor of the Springfield office (where Dart was employed).  She identified a "position description" applicable to the Specialist III position and stated there are five Specialist IIIs in her division.  She said the tasks assigned to those five people are "not necessarily" identi­cal.  She also said the Specialist IIIs do not all have the same caseload, and Kloever has additional duties of federal committees that the other Specialist IIIs do not have.  Mason stated Kloever has had this additional responsibility since "shortly" after he started working for the Board.  Prior to Kloever taking over that responsibility, Dart did that work.  According to Mason, Kloever received the assignment because Dart did not want to do it any longer.  Mason further described Kloever's responsibilities to include the publication of statistical data.  She also described special projects she had assigned to Dart.  She agreed both Kloever and Dart had caseloads of around 200 files.

Kloever testified regarding his employment at the Board for the previous eight years.  He stated he has a bachelor of science (B.S.) degree in business and securities analysis, and he took courses in accounting, finance, management, administration, economics, mathematics, and statistics.  He stated he owned a furniture business after graduation and operated that business for 12 years.  He said he also ran a restaurant and was involved in several political campaigns.

Kloever identified his application for employment with the Board and indicated his salary immediately prior to being hired was $1,500 per month.  He requested a salary of $1,660 per month, which was a 10% increase over his previous salary.

In regard to salary differentials, the record shows that when Kloever was hired he was given a salary of $1,662 per month, and at that time Dart was receiving $1,443 per month.  This disparity remained fairly constant and, by 1995, Kloever was receiving $2,717 per month while Dart was receiving $2,400 per month.

The Board's theory in regard to the allocation of burden of proof in a case of this nature is that the appropriate proce­dure is that used in proceedings under title VII of the Civil Rights Act of 1964 (title VII) (42 U.S.C. §2000e 
et
 
seq
. (1994)), which pro­vides, in relevant part:

"It shall be an unlawful employment practice for an employer--

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his 
compensation
, terms, conditions, or privileges of employment, because of such individual's race, color, religion, 
sex
, or national origin[.]"  (Emphasis added.)  42 U.S.C. §2000e-2(a)(1) (1994).

As set forth in 
Texas Department of Community Affairs v. Burdine
, 450 U.S. 248, 256-58, 67 L. Ed. 2d 207, 217-18, 101 S. Ct. 1089, 1095-96 (1981), under title VII, the complainant must first present a 
prima
 
facie
 case of discrimination.  If that is accom­plished, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." 
McDonnell Douglas Corp.
 v. Green
, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 678
, 93 S. Ct. 1817, 1824 (1973).  If that is not done, the complainant is entitled to recover.  If such a reason is articulat­ed, the complainant must then prove by a preponderance of the evidence that the reasons offered by the employer were merely pretext for discriminatory actions.  Thus, the ultimate burden of persuasion is with the complainant.

The Commission's theory is that which federal courts have applied in cases brought under section 206(d)(1) of the Equal Pay Act of 1963 (Pay Act) (29 U.S.C. §206(d)(1) 
(1994))
, which states, in pertinent part:

"No employer *** shall discriminate *** 
between
 
employees
 on the basis of 
sex
 by paying 
wages
 to employees *** 
at a rate less
 than the rate at which he pays wages to em­ployees of the opposite sex *** for equal work on jobs the performance of which requires equal skill, effort, and responsi­bility, and which are performed under similar working conditions."  (Emphasis added.)  29 U.S.C. §206(d)(1) (1994).

Under this legislation, if the complainant establishes by a preponderance of the evidence that an employer is paying members of one sex more than members of the other sex for similar work, the burden shifts to the employer to establish by a preponderance of the evidence that the differential is based upon (1) a senior­ity system, (2) a merit system, (3) a system that measures wages by the quality or quantity of production, or (4) a system "based on any other factor other than sex."  
Corning Glass Works v. Brennan
, 417 U.S. 188, 195-96, 41 L. Ed. 2d 1, 10-11, 94 S. Ct. 2223, 2228-29 (1974).  Accordingly, following the rule under the Pay Act, the burden of proof can shift to the employer.

In cases brought under the Act for discrimination in pay based on sex and where apparently no issue was raised as to the allocation of burden of proof, this court has followed the Pay Act standard.  See 
Northtown Ford v. Human Rights Comm'n
, 171 Ill. App. 3d 479, 487, 525 N.E.2d 1215, 1221 (1988); see also 
McCullar v. Human Rights Comm'n
, 158 Ill. App. 3d 1011, 1020, 511 N.E.2d 1375, 1381 (1987).  The Commission has also followed this rule in numerous other cases, including, 
e.g.
, 
Flora v. Clark County Publishing Co.
,  48 Ill. Hum. Rights Comm'n Rep. 3 (1989
).  However, subsequent to 
Northtown Ford
 and 
McCullar
, in a case brought under the Act concerning age discrim­ination in hiring, the Supreme Court of Illinois applied the title VII test for the alloca­tion of burden of proof and held the Commission could properly determine that the employer's stated reason for not hiring the complainant there was not a pretext.  The supreme court stated that court would follow the "framework" of title VII in deciding cases of employment discrim­ination under the Act.  
Zaderaka v. Illinois Human Rights Comm'n
, 131 Ill. 2d 172, 178, 545 N.E.2d 684, 687 (1989).

As 
Zaderaka
 was decided after 
Northtown Ford
 and 
McCullar
, we deem that its rationale should be followed here.  We see no valid reason why the burden on the employer should be greater in cases invol­ving pay based on sex than in cases brought under the Act for other types of dis­crimi­nation.  Under federal law, a differ­ent allocation of the burden of proof exists for Pay Act cases than for those under title VII,  but there, at least, different acts are involved, while under Illinois law all types of dis­crim­i­na­tion are covered by the Act.

The order of the Commission is somewhat ambiguous as to the way it allocated the burden of proof of the alleged discrimi­nation by the Board, but it did state:

"After the respondent has articulated its reason, the complainant must show that this reason is a pretext for unlawful dis­crimina­tion.  Pretext can be shown by demon­strating that the proffered reason is unwor­thy of belief.  [
Zaderaka
], 131 Ill. 2d 172, 545 N.E.2d [684]
 
(1987).  The complain­ant has argued that the respondent's reason is pretextual.  It is appropriate for us to examine each of Kloever's qualifications separately in light of the complainant's arguments."  
In re Celia J. Dart
, 
Ill. Hum. Rts. Comm'n Rep. 
1989SF0094, at 14 (June 26, 1996) (here­inaf­ter HRC's order of June 26, 1996). 

The order then stated, 
"[t]he complainant has successfully proven that the [Board's] reason [was] a pretext for unlaw­ful dis­crim­i­na­tion."  HRC's order of June 26, 1996, at 16.  A similar finding was made on pages 17 and 20 of the order.

The burden of proof as to the first step of both the title VII approach and that under the Pay Act is virtually the same, and although the Board contends Dart's proof in this issue was insufficient, no contention was made that application of the wrong burden of proof was involved in regard to that step.  At the second step, under the Pay Act procedure the employer must prove the differential is based upon a valid reason, while under the title VII procedure the employer only has to "articulate" a legitimate reason for its action.  Because of the all-

encompass­ing fourth factor of the 
Corning Glass Works
 reasons for an employer's actions, little difference exists between the factors an employer has to prove under the Pay Act approach or "articu­late" under the title VII approach.

The Pay Act approach has no third step to it, and the employer loses if a 
prima
 
facie
 case was made and the em­ployer has not proved a valid reason for its action.  The employee has a burden if the third step is reached, but if the employee does prove by a preponderance of the evidence that the reasons the employer was able to "articulate" were pretextual, no way exists by which the employer cannot be liable.  Thus, on the findings here, if supported by the evidence, Dart was entitled to recover even if the Commission's order indicates uncertainty as to the alloca­tion of burden of proof or even if the Commission recited the wrong burden of proof.  For the same reason, the fact that the Commis­sion recited the 
Corning Glass Works
 factors as being significant or as something the Board was required to prove does not negate the controlling factor of the Commission's finding that the Board's reasons were pretextual.

The evidence was such that a reasonable trier of fact could find for Dart using the title VII approach.  Her pay was lower than that of Kloever.  A trier of fact believing Dart and discounting some of Kloever's testimo­ny could have found their duties were substantial­ly similar with both receiving reports from approximate­ly 200 committees.  Kloever needed to know some federal law and regula­tion, but Dart had previously handled that task.  The evidence indicated Kloever's extra work (reports from federal committees) was likely more complex than that of Dart.  Dart relies partly upon the job description to prove the similar­ities of her work with that of Kloever, but job descriptions are not determina­tions of the equality of work (
Epstein v. Secretary, United States Department of Treasury
, 739 F.2d 274, 277 (7th Cir. 1984)).

No witness testified that Kloever's B.S. degree, business experience, or any other qualifications were considered in determin­ing his salary.  Evidence indicated that another Specialist III, Sharon Stewart (a female), had a master's degree in political science; yet, in 1991, she received $2,601 per month, which was slightly less than Kloever was paid.  The evidence was clear that the position of Specialist III did not require a college degree as long as the occupant of the job had the knowledge, skill, and mental development equivalent to four years of college.  The trier of fact could conclude from the evidence that a person could do the required work of the job without a college degree.  While Kloever's previous business experience would, no doubt, be helpful, that experience was not directly tied by the evidence to any function he performed.

We also express some concern with the reasoning of the Commission in downplaying the significance of Kloever's B.S. degree.  The Commission treated it as being insignificant because one without such a degree could do a passable job.  The Commis­sion stated, "[i]f a degree is not required to effectively do the tasks required of this position, then it does not follow that the mere fact of having one warrant[ed] a higher salary."  HRC's order of June 26, 1996, at 14.  Such a theory concedes too much to mediocri­ty and discourages the hiring of people of the highest quality.  A college education is a broadening experience enabling people to better respond to new and complicated situations.  

The tasks to be performed here by Dart and Kloever were not so simple that the college experience would not be greatly helpful.  The fact that a reasonably proficient job can be done by those without a degree is no reason to give little consider­ation to the degree.  Consider the following situation in a college setting:  A group of teachers with only B.S. degrees are teaching a sub­ject and only such a degree is required by the rules of the institu­tion.  Would it be discrimina­tory to give a much higher salary to a new teacher who has a doctorate degree even if the existing teachers have been doing a satisfactory job?

Finally, we consider the Board's complaint of the action of the ALJ in denying admission into evidence of two exhibits:  (1) a document entitled "Illinois Money in Elections in 1990" by Kloever and (2) a "Computer Instruction Booklet" by Christine Hennessey, a Specialist III.  The former was probative of the skills brought to the job by Kloever, and it was a breach of discretion to refuse the exhibit.  However, it was not revers­ible error.  The other document supported the testimony of Mason and explained the additional duties assigned to the election special­ists.  The ALJ felt that matter had been sufficiently covered by direct testimony.  Refusing the second exhibit was within the discretion of the ALJ.

Accordingly, for the reasons stated, we affirm the order of the Commission.

Affirmed.

COOK, J., concurs.

STEIGMANN, P.J., dissents.

PRESIDING JUSTICE STEIGMANN, dissenting:

I respectfully dissent.  

All litigants--even state agencies--are entitled to a fair trial.  When the trier of fact in a close case (such as this one) ap­plies the wrong bur­den of proof, the party vic­timized by this error has not re­ceived a fair trial.  

The majority asserts that "[b]ecause of the all-encom­passing fourth factor of the 
Corning Glass Works
 reasons for an employer's actions, little difference exists between the factors an employer has to prove under the Pay Act approach or 'articu­late' under the title VII approach."  Slip op. at 15.  However, no matter how the majority attempts to show similarities between factors, the "bottom line" difference between the burden of proof the Commission erroneously applied and the burden of proof it should have applied remains stark:  the erroneous burden of proof the Commission used placed the ultimate burden upon the Board to show it had 
not
 improperly discriminated; the correct bur­den would have left the burden of proof on the complaint, Dart, to show that the Board had improperly discrim­inat­ed.

The majority also writes that complainant Dart should pre­vail "even if the Commission's order indi­cates uncer­tainty as to the alloca­tion of burden of proof or even if the Com­mis­sion recited the wrong burden of proof."  Slip op. at 15.  But why should that be?  Given (1) the close­ness of this case, (2) the Commission's im­proper downplay­ing of the sig­nificance of Kloever's B.S. degree (well de­scribed by the ma­jori­ty opinion), and (3) the ALJ's erro­neous refusal (which the Com­mis­sion rati­fied) to re­ceive certain docu­ments into evi­dence, why should we guess what the result would be in this case if the trier of fact applied the 
correct
 burden of proof?  Would the ma­jority be as willing to af­firm if, in a civil bench tri­al, the trial court errone­ously stat­ed that the burden was on the defen­dant to prove by a prepon­der­ance of the evidence that the claims plain­tiff made were 
not
 true?  I doubt it, yet that seems to be the result here. By definition, in a case in which the evidence is even­ly balanced (like the present one), whoever has the burden of proof loses.  Thus, the Commission's misapplying the burden of proof in this case may well have been dispositive.

On the merits, the Commission's deci­sion sim­ply does not work in a practical sense.  Once an employee is hired into the state sys­tem, the orig­inal hire salary "sticks like glue" in the sense that it provides the base for any merit or gener­al in­crease in pay.  Once in the system, a pay increase accompany­ing a pro­mo­tion is--in most cases--limited to the lowest step in the new grade (see, 
e.g.
, 80 Ill. Adm. Code §310.80(e)(1) (1996)).  Thus, once an em­ployee starts at a lower salary, it will likely fol­low her to retire­ment; likewise, if she starts at a higher sala­ry.

The mechanism of allowing the hiring authority to pay more 
on
 
initial
 
hiring
 to better qualified or more experienced indi­vidu­als enables the hiring entity to upgrade the quality of new hires.  But once they are hired at higher salaries, those sala­ries may well be higher than those of lower-paid persons in the same or similar jobs throughout the remainder of their employ­ment.  This system is gender neutral.

According to the briefs, two men and five women re­ceived higher than minimum starting salaries.  This does not have the makings of a gender pay discrimination lawsuit.

Dart's real complaints seem to be that (1) she 
start­ed
 at the salary she did; and (2) a salary mecha­nism exists that per­mits oth­ers to be hired in at higher salary levels.  Howev­er, it appears for­tu­itous that she could find a male who bene­fited from this mecha­nism upon whom to base her discrimina­tion claim.

By virtue of the Commission's decision, plaintiff has used the Act to defeat the mechanism put in place to attract those with supe­rior experience and education.  This re­sult should raise a red flag throughout state govern­ment because many peo­ple who start­ed working "on the cheap," 
i.e.
, at the mini­mum, now might be able to use the Com­mission to get a hefty raise.